**STATE of Minnesota, Respondent,**

v.

**Gary Eugene GROVER, Appellant.**

**No. C6-86-484.**

Court of Appeals of Minnesota.

March 10, 1987.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Julius Gernes, Co. Atty., Winona, for respondent.

George M. Kadinger, St. Paul, for appellant.

Considered and decided by PARKER, P.J., and HUSPENI and FORSBERG, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

Gary Eugene Grover appeals from a judgment of conviction on charges of terroristic threats, Minn.Stat. § 609.713, subd. 1 (1984). Appellant contends that he is entitled to a new trial because he was denied effective assistance of counsel. We affirm.

## FACTS

On September 17, 1985, appellant and his brother, Gregory, were arrested in Winona, Minnesota as a result of an incident at the Winona Lake Park Lodge. Gregory Grover was charged with assault and held in the Winona County Law Enforcement Center (LEC). Appellant was charged with disorderly conduct and interfering with police procedure, and was released on his own recognizance. After entering a plea of not guilty on September 20, appellant was given a notice for trial which stated simply "same trial date as other Grover." A police lieutenant informed appellant that this probably meant September 27th.

On September 26th, Gregory Grover appeared in court and was informed that the charges against him had been dismissed. After his release, Gregory informed appellant that everything from the September 17th incident had been dropped.

On the morning of September 27th, while appellant was at work, two sheriff's deputies came to his home to execute a warrant for his arrest for nonpayment of child support. The deputies informed Linda Grover, appellant's wife, that they would not arrest

appellant if she posted bail and assured them that appellant would appear in court on Monday. Linda immediately posted the bail at the Winona LEC. While at the LEC, Linda Grover inquired as to whether there were any pending charges against appellant, and was told that there was nothing pending against him from the September 17th incident.

On the afternoon of September 27th, three police officers in three squad cars came to appellant's home with a warrant for his arrest for failure to appear in court on charges stemming from the September 17th incident.

Appellant claimed that he tried to explain to the officers that there was nothing pending against him, but that they would not listen, and immediately began to attack him with their flashlights and batons. The officers claimed that upon their arrival appellant refused to cooperate and immediately began threatening them. The officers testified that when they asked appellant to come with them to the LEC to straighten everything out, he adamantly refused, and told them that if they touched him he would "blow them away." The three officers wrestled with appellant, trying to handcuff him and get him into the squad car. One of the officers used a choke hold on appellant and another had him by the hair. Appellant admitted that during this time he told the police more than once that he was going to kill them.

The officers eventually got appellant into a squad car and to the LEC. At the LEC, appellant began experiencing problems breathing so he was taken to the Winona Hospital. Appellant was eventually taken to St. Mary's Hospital in Rochester via ambulance. There appellant was examined and returned to the Winona LEC.

During the time appellant was being booked and brought to and from the hospitals, he repeatedly threatened the arresting officers. He threatened to get them, kill them, and "blow them away." He told them he'd get even with them and intimated that he would harm their wives and children.

Appellant was subsequently charged with terroristic threats and the court appointed James Schultz as his attorney. Schultz did not contest the validity of the warrant for appellant's arrest for nonappearance, nor the validity of the arrest. At trial, Schultz told the jury that appellant did not deny that he had threatened the officers. Appellant explained that his behavior was his confused and frustrated reaction to what he believed was an unprovoked and undeserved assault on himself and his pregnant wife by police officers. After a two-day jury trial, appellant was found guilty of terroristic threats. Appellant was given a stay of imposition and placed on supervised probation for five years.

### ISSUE

Was appellant denied effective assistance of counsel?

### ANALYSIS

Appellant contends that he was denied his constitutional right to effective assistance of counsel, claiming that his court appointed attorney was inadequately prepared for trial, never asked for an evidentiary hearing or otherwise contested the validity of appellant's arrest, and failed to obtain appellant's authorization before admitting facts crucial to the prosecution's case. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), sets out a stringent test for reversing a conviction on grounds of ineffective assistance of counsel. *Strickland* provides that not only must defendant show that counsel's performance was deficient, but also that the deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. at 2064. That is, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068. Further, because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within "the wide range of reasonable profes-

sional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2066.

■ Appellant first objects to Schultz's failure to question several witnesses, his failure to obtain statements from the witnesses he did question until one day before trial, and, further, to his failure to discuss the case with appellant and his wife more than briefly. When, what, and how much investigation to conduct is often a strategic decision and, as long as reasonable, will not be the basis for finding ineffective assistance. *Id.* Here, it is apparent from the trial transcript that Schultz's investigation was adequate enough to allow for effective cross-examination of the State's witnesses and direct examination of appellant's witnesses. Perhaps it was Schultz's impression that this case did not require exhaustive investigation.

Appellant next contends that the warrant issued for his arrest on September 27th was invalid and appellant's arrest unlawful, claiming that the notice to appear which gave the date of appellant's subsequent court appearance as: "same as other Grover," was constitutionally inadequate.

It is apparent from the facts adduced at trial that there was indeed a misunderstanding about the status of appellant's case communicated to appellant, leaving him with the inaccurate impression that there were no charges pending against him. Schultz, however, never requested an evidentiary hearing to contest the validity of the warrant or the admissibility of subsequent statements made to police.

Appellant asserts this failure to request an evidentiary hearing, failure to introduce the notice itself into evidence, and failure to call the jailer who purportedly informed Mrs. Grover there was nothing further pending against appellant as further evidence of Schultz's ineffective representation.

■ Although Schultz did not ask for an evidentiary hearing, during the trial he used the testimony of appellant, his wife, and brother on this issue to support his argument that appellant's frustrated and savage response to the officers was justified by his genuine belief that there was no reason for his detention by police. This may have been a strategic move on Schultz's part which, although open to criticism, does not rise to the level of ineffective assistance. Schultz may have believed that contesting the validity of the warrant was futile, or that using this fact situation as a defense at trial would be more effective.

Moreover, even if failing to request an evidentiary hearing on this issue was an error in judgment, as stated in *Strickland,* it must be apparent that the result would have been different if Schultz *had* contested the warrant or the arrest. *See State v. Gates,* 398 N.W.2d 558 (Minn.1987). Even if the arrest had been ruled invalid, it is doubtful that *all* of appellant's post-arrest statements to police would have been excluded as "fruits of the poisonous tree." The sanction of suppression applies to any "fruits" of a constitutional violation. The test used in applying this rule is whether the later evidence has been obtained by exploiting the primary illegality, or by means which are purged of the primary taint. *United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Many factors bear on the application of this test, including "the temporal proximity of illegality and the fruit of the illegality, the presence of intervening circumstances, the purpose and flagrancy of the misconduct, [and] the likelihood that the evidence would have been discovered by legal means." *State v. Seefeldt,* 292 N.W.2d 558, 560 (Minn.1980).

■ Many factors precluding suppression apply in this case, particularly the fact that most of appellant's statements, the threats that form the basis of the charge of terroristic threats, were made hours after the initial arrest. The statements were not being offered to prove the crime on which

the warrant was based—but constituted a crime in and of themselves. Thus it could be argued that the statements were sufficiently remote from the illegality, if there was any. In addition, the alleged illegality appears to have been the result of a genuine misunderstanding and not a flagrant violation of appellant's rights.

As his final ground for claiming ineffective assistance, appellant points to Schultz's failure to consult with him before admitting facts forming the basis of the charges against appellant. During his opening statement, Schultz told the jury "we don't deny specifically what Mr. Grover said * * *. He said those things and perhaps all of you don't agree he should have said them * * *." Appellant argues that not only did Schultz fail to consult him before making this admission, but that contrary to this admission, he denied from the beginning that he ever threatened the policemen's wives or children, as the State claimed.

■ From the record before us, it is clear that appellant did not admit to threatening the officers' wives and children. Appellant admitted he had mentioned the officers' wives and children, but only to say—how would they feel if this happened to you?, and in various other ways alluded to the officers' families. Evidence tending to show that respondent had indeed made direct threats against the officers' wives and children was quite strong. It was apparently counsel's strategy to admit the statements were made and defend on the basis of justification, or appellant's extreme emotional state brought on by the officers' actions.

*State v. Wiplinger*, 343 N.W.2d 858 (Minn.1984) clearly states that if a criminal defense attorney impliedly admits his client's guilt to the jury without first obtaining the client's consent to this strategy it constitutes ineffective assistance. *Id.* at 860–861. Thus it was clearly an error in representation for Schultz to do so. However, even admitting this error, there is no doubt in this case that the same result would have occurred even if Schultz had never made this admission in his opening statement. Most of the terroristic threats *admittedly* made by appellant were made to and against the police officers themselves. Thus there was sufficient basis for a charge of terroristic threats without inclusion of the threats allegedly made by appellant against the officers' families.

■ Much of our analysis of appellant's claim is based on inferences and assumptions as to the reasons and purposes for Schultz's conduct. The Minnesota Supreme Court has repeatedly stated that an appeal from a judgment of conviction is not the most appropriate way of raising an issue concerning the effectiveness of the trial counsel's representation because the reviewing court does not have the benefit of all the facts concerning defense counsel's representation of appellant. *See, e.g., State v. Cermak*, 350 N.W.2d 328, 332 n. 5 (Minn.1984); *State v. Zernechel*, 304 N.W.2d 365, 367 (Minn.1981). This issue is more effectively presented in a post-conviction proceeding under Minn.Stat. §§ 590.-01–.06 (1984). *See, e.g., State v. Williams*, 282 Minn. 240, 163 N.W.2d 868, 869 (1969); *State v. Wenberg*, 357 N.W.2d 355, 356 (Minn.Ct.App.1984).

### DECISION

Appellant's claim of ineffective assistance of counsel was unsupported by the record and would have been better addressed at a post-conviction hearing.

Affirmed.