STATE of Minnesota, Respondent,

v.

Richard E. HOLLAND, Appellant.

No. C4–87–1336.

Court of Appeals of Minnesota.

March 29, 1988.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, Ross E. Arneson, Blue Earth Co. Atty., Mankato, for respondent.

C. Paul Jones, Public Defender, Steven P. Russett, Asst. Public Defender, St. Paul, for appellant.

Considered and decided by CRIPPEN, P.J., and HUSPENI and SCHUMACHER, JJ., without oral argument.

## OPINION

HUSPENI, Judge.

Richard Edward Holland appeals from a conviction of felony criminal damage to property, Minn.Stat. § 609.595 (1986), and misdemeanor convictions of obstructing legal process, Minn.Stat. § 609.50 (1986), driving after cancellation, Minn.Stat. § 171.24 (1986), and unsafe equipment, Minn.Stat. § 169.47 (1986), following a bifurcated jury trial, and from the dispositional departure sentence of one year and a day executed on the felony conviction and concurrent terms of 90 days for each of the misdemeanor convictions. We affirm as modified.

## FACTS

On the evening of April 8, 1987, on duty sergeants Dennis Landwer and Jerome Huettl of the Mankato Police Department observed appellant's pickup truck with its tailgate down, a non-functional taillight and headlights out of adjustment. The two officers decided to stop the truck to advise the driver of its unsafe condition. They relayed to the police dispatcher their intent to stop a vehicle.

After the officers activated the squad car's flashing red lights, the truck continued at 15–20 miles per hour without changing course, slowing down, or speeding up. The officers activated their siren several times to alert the driver to pull over, and Landwer shined a spotlight into the truck's passenger compartment.

Ultimately, the officers pulled alongside the truck, rolled down their window, shined the spotlight at the driver and yelled at him to stop. Appellant did not respond to the officers, and continued driving at 15–20 m.p.h. The squad car fell back and radioed for assistance. Subsequently, the officers again pulled alongside the truck, and made additional efforts to stop it.

Meanwhile, Deputy Juel Merseth responded to the call for assistance and positioned his marked squad so that he was proceeding in front of and in the same direction as the truck and other squad car. Merseth slowed to a stop, causing the truck to stop approximately one foot behind him. The other squad car also stopped and the officers got out and approached the pickup. Appellant responded by attempting to leave the scene, eventually slamming his vehicle into the right rear corner of Deputy Merseth's squad car.

Huettl and Landwer pursued the pickup which was backing down the center of the roadway at 10–15 m.p.h. Eventually the two squads pinned the truck between them but only after appellant had backed into Landwer's squad car, damaging its grill and headlights. When the officers approached the truck, the driver's window was up and the door locked. Appellant ignored Landwer's orders to get out of the vehicle, and was subsequently forcibly removed from the truck. As soon as he was touched, appellant yelled for help and claimed he was being kidnapped.

Appellant was handcuffed, refused to identify himself, and had to be carried to the squad car. He again said he was being kidnapped and that his "God-given constitutional rights" were being violated. Appellant became silent when placed in the squad car and was transported to the law enforcement center. It was later deter-

mined that appellant's driver's license had been canceled.

Appellant was formally charged with obstructing legal process, driving after cancellation, unsafe equipment, and criminal damage to property. An additional charge of fleeing from a peace officer was dismissed prior to trial.

Appellant refused to clothe himself, and his initial court appearance was conducted in his jail cell. During this proceeding, he lay on his bunk with his back to the court, refused to provide his correct name, and asserted his "God-given constitutional rights" in response to questioning by the court. After being advised that appellant had refused to eat in the last five days, the court ordered a mental examination pursuant to Minn.R.Crim.P. 20.02.

Appellant refused to walk to his next scheduled court appearance (an omnibus hearing), and he was carried to court, where he then lay on the floor, asserting that he did not wish to give up his "God-given constitutional rights," that he had been kidnapped, and that he was being held against his will. He demanded that the court obey the constitution and place the officers under arrest for kidnapping. When the court did not do so, appellant declared that he was placing the court under arrest.

Appellant refused to recognize the public defender as his attorney, asked the public defender to identify himself, interrupted continuously, claimed he had been kidnapped, and stated he was placing the court, counsel and officers under arrest. After warning appellant several times to sit down and be quiet, the court ordered him removed from the courtroom.

The court explained that because appellant refused to cooperate with evaluators, the competency evaluation was inconclusive, and found appellant competent to stand trial.

Upon entering the courtroom for trial, appellant advised the court that he would not give up his "God-given constitutional rights," challenged the jurisdiction of the court, and stated he was placing the trial judge under arrest. The court warned appellant that his continued interruptions would result in his being gagged or removed from the courtroom. When appellant indicated he wished to represent himself at trial, the court appointed the public defender as standby counsel, and advised appellant that if he had to be excluded from the courtroom, the court-appointed attorney would conduct the trial in his absence and that appellant would be allowed to watch it on live video.

The court asked appellant if he intended to cooperate in the conduct of the trial. Appellant responded by accusing the court of not obeying the constitution and of committing treason. He once again stated he was placing the judge under arrest. The court warned appellant that if he chose to remain in the courtroom, he must obey the rules and procedures of the court.

When the jury panel entered the courtroom, appellant informed them that the judge was a member of the "judicial mafia," and warned them that if they proceeded they would be committing a federal felony. At that point, appellant was removed from the courtroom, escorted to a room adjacent and permitted to view the proceedings via television. Jury selection began in appellant's absence. When advised that he could return to the courtroom if he "behave[d] himself," appellant again replied that he refused to give up his "God-given constitutional rights." When advised by the court that the public defender intended to assert the defense of mental illness, appellant questioned the public defender's qualifications, license, authority and standing to represent him. Once again appellant was removed from the courtroom.

When the jury was sworn, the court again informed appellant that he could return to the courtroom if his conduct warranted it. Although repeatedly so advised, appellant remained voluntarily absent for several hours. Upon his return, he began to address the jury with his allegations of judicial treason and kidnapping, was warned and again removed.

Upon completion of the state's case, appellant returned to the courtroom and was

advised of his right to testify. He refused to take an oath, but began to speak to the jury. The court's warnings were ignored and once more appellant was removed. The public defender presented appellant's case.

Before counsel began their closing arguments, the court again reminded appellant that he could be present in the courtroom and made sure the video camera and monitor were functioning.

After the jury returned its guilty verdicts and the second phase of the trial began, the court spoke to appellant via the video camera and reminded him again of his right to be present. The public defender presented several witnesses in support of the defense of mental illness. Evidence was also introduced regarding appellant's behavior while incarcerated in jail pending the trial.

The jury returned with a verdict finding that appellant was not mentally ill. Appellant, who was originally allowed to return for the verdict, was again removed prior to the reading of the verdict when he again continually interrupted the trial court.

Appellant appeared for sentencing, having refused to cooperate with the completion of a presentence investigation report. Once again, he continued to interrupt the sentencing court and was ordered removed from the courtroom.

The court sentenced appellant to one year and one day for aggravated criminal damage to property and to a concurrent term of 90 days for the three other convictions. At the hearing and in its departure report, the court stated the following reasons for departing dispositionally and executing the sentence:

1. [Appellant] has been completely unwilling to cooperate with the Court, his jailers or the probation agent assigned to conduct the presentence investigation of his case.

2. [Appellant's] obstreperousness is simply his attempt to prevent the Court and the Community Corrections Department from carrying out their duty to try and sentence [appellant].

3. Given [appellant's] proven and deliberate unwillingness to cooperate, the Court is convinced that he is not amenable to any form of supervised probation.

4. The Court is departing from the Guidelines because a stay with probation or more jail time would be fruitless.

Appellant's motion for release pending appeal was granted by the trial court, which observed that "[Appellant's] exemplary and cooperative conduct in court today establishes that he can be reasonable and that his actions during all previous court appearances were deliberate and designed to obstruct the court proceedings."

## ISSUES

1. Did appellant's disruptive behavior throughout court proceedings constitute a constructive waiver of his sixth amendment right to proceed pro se?

2. Is appellant entitled a reversal of his convictions where defense counsel made certain concessions during closing argument?

3. Is appellant entitled to a new trial for alleged errors made during trial?

4. Did the trial court properly find that the offenses convicted for did not arise from a continuing and uninterrupted course of conduct or manifest an indivisible state of mind?

5. Was the court's dispositional departure in sentencing appellant error?

## ANALYSIS

### I.

Appellant claims that counsel was foisted upon him against his wishes and his constitutional right to represent himself was violated. In *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975), the United States Supreme Court held that an accused has a sixth amendment right to conduct his own defense if he voluntarily and intelligently elects to do so. The Court noted however, that "a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused

requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Id.* at 834 n. 46, 95 S.Ct. at 2541 n. 46. *See also* Minn.R.Crim. P. 5.02, subd. 1. The trial court did not err in appointing standby counsel in this instance.

■ Disruptive conduct by an accused at trial may justify his removal from the courtroom and effectively constitute a waiver of sixth amendment rights. *Illinois v. Allen*, 397 U.S. 337, 342, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970) (right to be present at trial is not absolute); *see United States v. Dougherty*, 473 F.2d 1113, 1126 (D.C.Cir.1972) (the right of self-representation "rests on an implied presumption that the court will be able to achieve reasonable cooperation"). The right of self-representation gives neither a "license to abuse the dignity of the courtroom," nor a "license not to comply with relevant rules of procedural and substantive law." *See Faretta*, 422 U.S. at 835 n. 46, 95 S.Ct. at 2541 n. 46.

■ Appellant argues his right to self-representation was violated when the court "terminated [his] pro se status and invested complete control over [his] case to standby counsel." Appellant admits that there are some circumstances where the right to self-representation may be waived, but argues that where an accused "never acquiesced in counsel's decision to present his defense" he should not be deemed to have waived the sixth amendment right. We cannot agree.

The trial judge explicitly informed appellant that he would be removed and his court-appointed attorney would represent him if he did not follow the procedures and rules of the court. The court gave appellant numerous opportunities to return to the courtroom and each time appellant returned, he immediately resumed his disruptive behavior. He was detained in a room immediately adjacent to the courtroom and told he could return to the courtroom at any time. Appellant was able to hear and view the trial through closed circuit television.

Appellant also argues that because his absence and conduct in trial was "wholly consistent with the nature of his 'personal' defense" that "he had committed no crime and the state had no jurisdiction to try him," the appointment of standby counsel improperly contradicted appellant's position. Appellant's conduct was indeed consistent throughout his arrest and court proceedings. His personal defense to the crimes charged, however, is unsupported by law. The court had the authority and jurisdiction to try appellant.

In recognizing a right to self-representation, the court in *Faretta* anticipated that defendants representing themselves may use the courtroom for deliberate disruption of their trials. 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46. The court limited the right to self-representation, stating "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Id.* The record indicates that appellant's actions were very disruptive, and that the trial judge acted prudently and reasonably in attempting to insure a fair trial under conditions of substantial stress. Appellant was fully advised of his rights and was continually informed that he could return to the courtroom at any time. There can be no doubt but that by his repeated disruptive behavior appellant waived his right to self-representation.

## II.

■ Defense counsel stated in closing argument:

There will be a series of questions, one dealing with each of the four counts. Have all of the elements charging him with Obstructing Legal Process been proved and proved by the prosecutor beyond a reasonable doubt, yes or no, and I submit that because of the element of intent that is required in that crime, the answer should be no. The same with Count IV, the intentionally causing criminal damage to property should be, no. I will leave it up to you as to the other two crimes which do not require an intent on his part and the evidence probably does

call for a yes answer to those two and the same as to the last question dealing with whether there has been over $300 damage.

Appellant argues that he did not consent to the admission of guilt for the two misdemeanors and the element of the property damage charge, and the statements by his attorney amounted to error requiring a new trial.

Generally, a criminal defense attorney cannot admit a client's guilt to the jury without first obtaining the client's consent to this strategy. We note initially, however, that claims which involve assessment of the conduct and strategy of trial counsel are very difficult to review on a direct appeal record, and are most appropriately and effectively raised in a postconviction proceeding. *State v. Grover*, 402 N.W.2d 163, 167 (Minn.Ct.App.1987).

In light of appellant's uncooperativeness, defense counsel's decision to concede the two misdemeanor convictions may have been more akin to a tactical determination than to an admission of guilt. *See Brookhart v. Janis*, 384 U.S. 1, 8, 86 S.Ct. 1245, 1249, 16 L.Ed.2d 314 (1966) (Harlan, J., concurring) ("[a] lawyer may properly make a tactical determination of how to run a trial even in the face of his client's incomprehension or even explicit disapproval"). The Minnesota Supreme Court has acknowledged that there are cases where the admission of guilt or partial guilt is sound trial strategy:

> One is where the defense attorney desires to admit that defendant is guilty of one of two charges in the hope of increasing his credibility with the jury and increasing the chance that the jury will acquit defendant on the other charge.

*State v. Wiplinger*, 343 N.W.2d 858, 861 (Minn.1984).

On the record before us, we cannot discern any impropriety in defense counsel's conduct of appellant's case. Appellant was given ample opportunity to communicate with his attorney. His failure to do so cannot be used as a basis for requiring a new trial and the trial court did not err in denying one.

## III.

Appellant alleges that four trial errors denied him a fair trial: First, that the trial court's instruction to the jury that "as soon as you return [the verdict], we will commence the trial of the second phase of this action," improperly expressed the court's belief that appellant was guilty. No objection was made to this instruction at trial and therefore any objection should be deemed waived. Additionally, jury instructions must be viewed in their entirety, and when so viewed we conclude that the challenged statement was not prejudicial.

Second, appellant argues that the state's comment that appellant's counsel, not appellant himself, was raising the mental illness defense, was prejudicial. While we agree with appellant that this remark was inappropriate, the court promptly issued a curative instruction and we find no prejudice.

Third, appellant argues that a peace officer's testimony at trial that he recognized appellant from "various dealings in court" was prejudicial. Again we note both that appellant raised no objection to this testimony and that this passing remark in the context of abundant testimony demonstrating guilt was not prejudicial.

Fourth, appellant argues that the testimony of a peace officer that an open tailgate and white taillight constituted violations of law invaded the province of the jury. We conclude that the likelihood is slight that this brief statement played a substantial part in influencing the jury to convict.

Finally, appellant's argument that the cumulative effects of these cited errors constitute reversible error is not persuasive. The constitutional guarantee of a fair trial does not require a "trial which is perfect in every detail." *State v. Billington*, 241 Minn. 418, 427, 63 N.W.2d 387, 392–93 (1954).

## IV.

Appellant argues that the imposition of multiple sentences for his felony and mis-

demeanor convictions violates Minn.Stat. § 609.035 (1986) which provides:

Except as provided in sections 609.251, 609.585, 609.21, subdivisions 3 and 4, and 609.2691, if a person's conduct constitutes more than one offense under the laws of this state, he may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. * * *

The determination of whether offenses arise from a single behavioral incident is dependent upon the particular facts and circumstances of each case. *State v. Banks*, 331 N.W.2d 491, 493 (Minn.1983). When the offenses include both intentional and unintentional crimes, the critical question is whether the offense "[arose] out of a continuing and uninterrupted course of conduct, manifesting an indivisible state of mind or coincident errors of judgment." *State v. Sailor*, 257 N.W.2d 349, 352 (Minn. 1977).

■ Appellant contends that each of the convictions arose out of a single course of conduct, which began with his decision to drive, continued when he failed to stop for the police, and culminated with his attempts to avoid apprehension. The state argues that the driving after cancellation and unsafe equipment violations were continuing offenses which were committed the moment he started the car and were not linked with the felony offense of aggravated criminal damage to property. We agree with the state that the criminal damage offense was motivated by a criminal objective separate and distinct from that present in either the driving after cancellation or unsafe equipment violations. Therefore, the sentences on these three offenses do not offend the requirements of Minn.Stat. § 609.035. However, we find, and the state concedes, that the convictions for aggravated criminal damage and obstructing legal process were so "closely related" as to constitute a single course of conduct. The obstructing legal process sentence must be vacated.

V.

■ The trial court departed dispositionally and executed the presumptively stayed sentence of one year and one day. Appellant argues the trial court erred in so doing. We agree.

We recognize that "perpetrator-related factors" such as unamenability to probation, dangerousness and failure to take advantage of treatment programs may bear on a dispositional departure from the presumptive sentence. *State v. Wall*, 343 N.W.2d 22, 25 (Minn.1984). The trial court justified its sentence entirely on the grounds that appellant was unamenable to probation, and based this determination on appellant's uncooperative attitude with the court, his jailers, a former probation officer and the probation officer assigned to conduct the presentence investigation.

Our review of the record convinces us that the trial court's departure was substantially influenced by appellant's continual, vocal and good faith assertion of his constitutional rights. Even though appellant misconceived the timeliness and appropriateness of his constitutional arguments, we conclude that unamenability to probation was not sufficiently demonstrated thereby. Indeed, the trial court released appellant on his own recognizance pending appeal and recognized appellant's "exemplary and cooperative" demeanor during his appearance on his post-trial release motion. We believe this observation by the trial court is evidence of appellant's willingness and ability to cooperate and comply with the requirements of probation officers and his amenability to the probationary setting despite his uncooperative attitude during the trial phase of this proceeding. Surely any future demonstration of unamenability to probation would result in a revocation hearing. However, on the record before us on appeal, we conclude that dispositional departure was inappropriate.

## DECISION

Appellant waived his right to self-representation by his very disruptive conduct in court. Conduct of appellant's appointed

counsel and alleged errors by the court did not deny appellant a fair trial. The obstructing legal process sentence is vacated. The court erred in departing dispositionally in sentencing.

Affirmed as modified.

SCHUMACHER, Judge (dissenting).

I disagree with the majority insofar as they modify the dispositional departure based on their conclusion that the departure was "inappropriate." The trial court in its detailed written sentencing departure report made findings that defendant was not amenable to supervised probation because of his "deliberate unwillingness to cooperate" in past probation and with the person conducting the presentence investigation in the present case. The supreme court has stated that this is a proper ground for departure. *State v. Park,* 305 N.W.2d 775, 776 (Minn.1981). The majority's reasoning that the trial court's departure was influenced by appellant's good faith assertion of his constitutional rights is simply not supported by the record. The fact that appellant's conduct was exemplary and cooperative during his presentence release, although laudatory, is not unusual and certainly not controlling as far as the issue of departure is concerned.

Our judgment should not be substituted for that of the trial court and the departure should not be modified in the absence of a clear abuse of discretion. *State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981). Appellant does not assert that he was exercising constitutional rights in failing to cooperate with prior probation or with the present presentence investigation. Here the trial court has stated proper grounds for a departure and there is no clear abuse of discretion. We should affirm.