STATE of Minnesota, Respondent,

v.

Barnell WORTHY (C8–96–1928), Marvin McKinnis, a/k/a Tom Jackson (C3–96–1948), Appellants.

Nos. C8–96–1928, C3–96–1948.

Court of Appeals of Minnesota.

Oct. 7, 1997.

Review Granted Dec. 16, 1997.

Hubert H. Humphrey III, Attorney General, Thomas R. Ragatz, Assistant Attorney General, St. Paul, for Respondent.

David M. Gilbertson, Chippewa County Attorney, Montevideo, for Respondent.

John M. Stuart, State Public Defender, Cathryn Middlebrook (C8–96–1928), Lawrence Pry (C3–96–1948), Assistant Public Defenders, Stephanie Erickson, Certified Student Attorney (C8–96–1928), Minneapolis, for Appellants.

Considered and decided by NORTON, P.J., and PETERSON and AMUNDSON, JJ.

## OPINION

NORTON, Judge.

Appellants, who were pro se defendants, appeal from judgments of conviction because they allege it was improper for the trial to be conducted after they voluntarily left the courtroom and standby counsel were not reappointed to defend them. We agree and reverse.

## FACTS

In March 1996, appellants Marvin McKinnis and Barnell Worthy were arrested and charged with multiple felonies including burglary and criminal damage to property. The court appointed public defenders to represent them. Appellants demanded a speedy trial and the trial court consolidated their cases. The trial court scheduled their trial to begin on May 15, 1996. On the morning of trial, both appellants terminated representation by the public defenders because they had told appellants that they did not have strong cases. Appellants asked the trial court for a continuance to obtain private counsel. The court refused because of appellants' earlier speedy trial demands and because the request for a continuance occurred on the morning the trial was to begin. The prosecutor also objected to a continuance because the trial had already been scheduled, the jury was waiting, and she believed appellants were only trying to delay. Appellants informed the court that they would not participate in the proceedings without private counsel and were adamant in refusing the public defenders' services. Despite multiple inquiries by the court, appellants never provided the court with a name of any private counsel.

The trial court, prosecutor, and standby public defenders all agreed that appellants should be considered pro se defendants. The trial court told appellants that if they proceeded without counsel, they would be held to the same standards as attorneys. The trial court also assured appellants that the public defenders would remain in the courtroom in an advisory capacity. Both appellants told the court that they did not want to be in the courtroom during the trial. The court informed them that the law required them to be present at least at the start of the trial, but that they could leave after the jury had been sworn. The court also told appellants, however, that the trial would continue to a verdict in their absence. The court repeatedly encouraged appellants to stay with their experienced public defenders and informed them that they could change their minds at any time.

Voir dire commenced with appellants' public defenders observing in their standby roles. Shortly thereafter, however, appellants re-hired their public defenders and jury selection proceeded for a short time with both public defenders actively participating. Then, appellants again dismissed their public defenders, stating that they had contacted another lawyer. When the court questioned them, however, appellants once again did not have a name of any attorney nor were they sure if one had been or was going to be hired.

The remaining members of the jury were then selected while standby counsel were present in the courtroom but not participating. Appellants were brought into the courtroom while the jury was sworn, but they immediately returned to their cells. The court decided not to compel their attendance because it felt that they, "without any doubt, would behave in a manner that would demean the dignity of the justice system * * * [and] would not be here unless actual physical force is used by the sheriff's department." The trial took two days. The prosecutor gave an opening statement, presented testimony by five witnesses and gave a closing argument. Standby counsel took no part in the proceedings, sitting in the back of the courtroom throughout trial. No one participated on behalf of appellants. The jury returned guilty verdicts against appellants on all charges.

### ISSUE

Did the trial court err when it failed to reappoint counsel for pro se defendants who were voluntarily absent from their own trial?

### ANALYSIS

■ "The Sixth and Fourteenth Amendments guarantee a criminal defendant the right to counsel and, reciprocally, the right of self-representation." *State v. Camacho*, 561 N.W.2d 160, 170–71 (Minn.1997); *see* U.S. Const. amends. VI, XIV, § 1; *see also* Minn. Const. art. I, §§ 6, 7 (setting forth similar rights of accused in criminal trials); *Faretta v. California*, 422 U.S. 806, 807, 818–19, 95 S.Ct. 2525, 2527, 2532–33, 45 L.Ed.2d 562 (1975) (holding that accused has right to self-representation in criminal trial); *Gideon v. Wainwright*, 372 U.S. 335, 343–45, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799 (1963) (holding that, under Sixth and Fourteenth Amendments, an indigent defendant in state court has right to appointment of counsel). The right of self-representation is not subject to harmless error analysis. *Camacho*, 561 N.W.2d at 171. Similarly, "[t]he denial of either the right to counsel or the right of self-representation does not require a showing of prejudice to obtain reversal." *Id.*

■ Whether a criminal defendant can exercise his right to proceed pro se and then absent himself from the courtroom leaving no one to advocate for his interests is an issue of first impression for this court. The trial court's decision to allow appellants to be convicted in their absence, with no one advocating for their interests, must be reversed because the Sixth Amendment requires that a defendant be convicted after some type of adversarial proceeding. A proceeding with no one opposing the prosecutor cannot be considered adversarial. The United States Supreme Court has noted:

> "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *Herring v. New York*, 422 U.S. 853, 862, 95 S.Ct. 2550, 2555 [45 L.Ed.2d 593] (1975). It is that "very premise" that underlies and gives meaning to the Sixth Amendment. It "is meant to assure fairness in the adversary criminal process." *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 667 [66 L.Ed.2d 564] (1981). Unless the accused receives the effective assistance of counsel, "a serious risk of injustice infects the trial itself." *Cuyler v. Sullivan*, 446 U.S. [335,] 343, 100 S.Ct. [1708,] 1715 [64 L.Ed.2d 333 (1980)].

*United States v. Cronic*, 466 U.S. 648, 655–56, 104 S.Ct. 2039, 2045, 80 L.Ed.2d 657 (1984) (footnotes omitted).

In those cases where the accused rejects the assistance of appointed counsel, however, unforeseen problems can arise. For instance, when a defendant represented him-

self, had appointed counsel as an advisor, wreaked havoc in the courtroom by disrupting trial and insulting the judge, and ultimately was removed, the Supreme Court required contempt proceedings be heard by a judge other than the presiding trial judge in order to guarantee fairness. *Mayberry v. Pennsylvania*, 400. U.S. 455, 466, 91 S.Ct. 499, 505, 27 L.Ed.2d 532 (1971). In a concurring opinion, Chief Justice Burger said:

> The value of the precaution of having independent counsel, even if unwanted, is underscored by situations where the accused is removed from the courtroom under *Illinois v. Allen [*397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)*]*. The presence of counsel familiar with the case would at the very least blunt Sixth Amendment claims, assuming they would have merit, when the accused has refused legal assistance and then brought about his own removal from the proceedings.

*Id.* at 468, 91 S.Ct. at 506 (Burger, C.J., concurring).

This court has relied on the wisdom of Chief Justice Burger:

> A criminal trial is not a private matter; the public interest is so great that the presence and participation of counsel, even when opposed by the accused, is warranted in order to vindicate the process itself.

*State v. Lande*, 376 N.W.2d 483, 485 (Minn. App.1985) (quoting *Mayberry*, 400 U.S. at 468, 91 S.Ct. at 506 (Burger, C.J., concurring)), *review denied* (Minn. Jan. 17, 1986). Other Minnesota cases have recognized the importance of the adversarial process. *See State v. Olson*, 325 N.W.2d 13, 19 (Minn. 1982) (adversarial system of justice requires that prosecutor alone cannot be charged with assessing whether mitigating factors exist in sentencing); *State v. Williams*, 297 Minn. 76, 85 n. 8, 210 N.W.2d 21, 26 n. 8 (1973) ("[D]efense counsel is * * * one of the three major participants along with judge and prosecutor. * * * The adversary system requires his presence and his zealous professional advocacy just as it requires the presence and zealous advocacy of the prosecutor and the constant neutrality of the judge." (quoting ABA Standards for Criminal Justice, The Defense Function, § 1.1 (a, b))).

Respondent contends that the right to self-representation announced in *Faretta* superseded the Supreme Court's decisions requiring an adversarial proceeding with an attorney for each side in the criminal arena. To support this theory, respondent points out that the reasoning in the *Mayberry* concurrence appears in the dissent in *Faretta* and, therefore, had to have been rejected by the majority in *Faretta*. The concurrence noted, "[T]he integrity of the process warrants a trial judge's exercising his discretion to have counsel participate in the defense even when rejected." *Mayberry*, 400 U.S. at 468, 91 S.Ct. at 506 (Burger, C.J., concurring). Similarly, in Chief Justice Burger's dissent in *Faretta*, he explained that the goal of insuring that justice is achieved in every criminal trial

> is ill served, and the integrity of the public confidence in the system [is] undermined, when an easy conviction is obtained due to the defendant's ill-advised decision to waive counsel. * * * The system of criminal justice should not be available as an instrument of self-destruction.

*Faretta*, 422 U.S. at 839–40, 95 S.Ct. at 2543 (Burger, C.J., dissenting).

Respondent's interpretation of these cases is unpersuasive for a number of reasons. First, neither *Faretta* nor *Mayberry* faced the combination of a defendant seeking both the right to proceed pro se and the right to be absent from the courtroom. Therefore, the decisions in each case should not be construed as addressing the combination of challenges that the trial court faced in the present situation. Further, respondent's interpretation suggests that the right to proceed pro se and the need to protect the adversarial nature of the criminal justice system are mutually exclusive. Such is not the case.

*Faretta* is the landmark case that determined that the Sixth Amendment allows the accused to make his or her own defense. *Id.* at 819, 95 S.Ct. at 2533. Defendant Faretta wanted to represent himself and unequivocally stated as much to the court. *Id.* at 807, 95 S.Ct. at 2527. The trial court refused to allow Faretta to conduct his own defense.

*Id.* at 808–10, 95 S.Ct. at 2527–29. The Supreme Court reversed, holding that the Sixth Amendment allows a defendant to represent himself regardless of legal training. *Id.* at 835, 95 S.Ct. at 2541. Unlike the appellants in this case, Faretta sought to conduct his own defense and presumably would not have left the courtroom had he been allowed to defend himself. The *Faretta* court did not face the prospect of convicting Faretta in absentia if it allowed him to represent himself; the majority opinion in *Faretta* does not control or even address such a situation.

Further, it is essential to note, and fatal to respondent's argument, that *Faretta* did not give a pro se defendant an absolute right to represent himself. Rather the Court acknowledged that when a pro se defendant "deliberately engages in serious and obstructionist misconduct," a trial court may terminate the defendant's right to self-representation. *Id.* at 834 n. 46, 95 S.Ct. at 2541 n. 46; *see also State v. Holland,* 421 N.W.2d 382, 387 (Minn.App.1988) (holding that defendant's disruptive behavior at trial may justify removal from courtroom and constitute waiver of self-representation); (citing *Faretta,* 422 U.S. at 835 n. 46, 95 S.Ct. at 2541 n. 46; *Illinois v. Allen,* 397 U.S. 337, 342, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970)).

The Supreme Court decision in *Cronic,* nine years after *Faretta,* demonstrates that the Supreme Court continues to embrace the notion that a trial court has a duty to guarantee that the trial process provides the defendant an adversarial forum:

> The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.

*Cronic,* 466 U.S. at 656–57, 104 S.Ct. at 2045–46 (footnotes omitted). We hold that when a trial court faces defendants like those in the present action, it must balance *Faretta*'s right to proceed pro se against *Cronic*'s guarantee of adversarial proceedings. When, as in this case, a pro se defendant's obstructionist conduct begins to affect the court's responsibility to provide an adversarial forum, the court should inform the defendant that if his conduct does not cease he could lose the right to continue pro se. In this case the trial court should have told appellants that their wish to be absent from their own trial would result in their public defenders' reappointment. *See New Jersey v. Wiggins,* 158 N.J.Super. 27, 385 A.2d 318, 319–20 (1978) (holding reversible error for judge not to reappoint defense counsel after defendant left courtroom).

■ Respondent makes a number of additional arguments. First, it contends that *State v. Richards,* 552 N.W.2d 197, 205 (Minn.1996), bars the reappointment of counsel where the defendant seeks to delay or manipulate the proceedings. To the contrary, *Richards* acknowledges that the trial court has the responsibility and discretion to regulate the conduct of the trial, including appointing or not appointing standby counsel. *Id.* at 206–07.

Second, respondent argues that a pro se party who voluntarily absents himself from a trial is in the same or no worse position than a pro se party who remains silent or who conducts his defense in a manner that worsens his fate. While, in some circumstances, this argument may be true, respondent fails to acknowledge the trial court's duty to protect the Sixth Amendment and the public's interest by requiring adversarial trials.

Finally, respondent invokes Minn. R.Crim. P. 26.03, subd. 1(2), which reads:

> (2) *Continued Presence Not Required.* The further progress of a trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to waive the right to be present whenever:
>
> 1. a defendant voluntarily and without justification absents himself or herself after trial has commenced * * *.

The rule states on one hand that a defendant who voluntarily absents himself from trial,

after the trial begins, effectively waives his right *to be present during trial.* On the other hand, the rule does not state that by absenting himself the defendant simultaneously waives his Sixth Amendment right to be convicted by an adversarial proceeding. While no case is directly on point, several Minnesota "in absentia" cases include enough facts to conclude that, in those cases, after the defendants absented themselves from trial and the trial recommenced, the trial continued with counsel representing the defendants' interests. *See State ex rel. Shetsky v. Utecht,* 228 Minn. 44, 46, 50, 36 N.W.2d 126, 127, 129–30 (1949) (holding that defendant, who absented self from trial and never returned, had waived right to be present at trial and rendering of verdict; defendant received due process when his attorney represented his interests at trial); *State v. Harris,* 407 N.W.2d 456, 458, 463 (Minn.App.1987) (defendant absented himself and attorney represented him at trial), *review denied* (Minn. July 31, 1987).

We hold that, although rule 26.03 allows a trial to *continue* in a defendant's voluntary absence, it does not allow a defendant to be convicted of a crime if *no one* advocates for his interests in his absence. In sum, none of respondent's arguments defeat the Supreme Court holdings that interpret the Sixth Amendment to require a conviction to be the product of an adversarial proceeding.

### DECISION

The Sixth Amendment and the integrity of the criminal justice system do not allow an absent defendant to be convicted without some type of adversarial proceeding. The trial court erred, under the unique facts presented in this case, by failing to reappoint appellants' public defenders when it was apparent that no one would represent their interests.

**Reversed.**