STATE of North Dakota, Plaintiff
and Appellee,

v.

Elliot C. RICEHILL, Defendant
and Appellant.

Cr. No. 870064.

Supreme Court of North Dakota.

Nov. 19, 1987.

Lewis C. Jorgenson, State's Atty., Devils Lake, for plaintiff and appellee State of N.D.

David C. Thompson of Craft & Thompson, P.C., Fargo, for defendant and appellant.

VANDE WALLE, Justice.

Elliot Ricehill appealed from a judgment of conviction entered upon a jury verdict finding him guilty of the crime of possession of a firearm by a person previously convicted of a felony, in violation of Section 62.1–02–01(1), N.D.C.C. On appeal, Ricehill raises two issues:

1) That Section 62.1–02–01(1) is unconstitutional because it violates his right to keep and bear arms under Article I, Section 1, of the North Dakota Constitution, and

2) That he was denied effective assistance of counsel at trial.

We affirm, but without prejudice to Ricehill to raise his claim of ineffective assistance of counsel at a proceeding for post-conviction relief.

The information in this case charged that on or about March 7, 1986, Ricehill had "in his possession and under his control a firearm, within 10 years from being incarcerated for a felony involving violence, to-wit: The said defendant had in his possession a pistol and had been incarcerated for the crime of murder within the last 10 years."

At trial, the State relied on the testimony of Mark Schimetz and city police officer Harry Johnson. Briefly related, the testimony of Schimetz was that on the evening in question Ricehill had invited him into his car where they had conversed and where Ricehill had shown him a rifle lying in the back seat and a revolver which Ricehill

removed from the glove compartment.[1] Schimetz gave conflicting testimony as to the time of evening of this meeting. Schimetz also testified that he reported this encounter to the police on that same evening.

Officer Johnson testified that later that evening he stopped the Ricehill car. Although he had been watching the car since the report of Ricehill's possession of a weapon, the stop occurred after he observed the car, while being driven by Mrs. Ricehill, drive over the centerline. During the stop, Johnson saw an open can of beer at the feet of Ricehill, who was a passenger in the car. Because this is a violation of North Dakota's open-bottle law, Johnson placed Ricehill under arrest and conducted a search of the automobile, looking for other evidence of the open-bottle violation. This search produced a rifle, and a revolver which was removed from the locked glove compartment.

Ricehill testified on his own behalf at trial. He testified that the two guns belonged to his wife, and that although he had spoken with Schimetz about the two guns he had never handled them. He further testified that he could not have shown the revolver to Schimetz because it was locked in the glove compartment of the car and he did not have the keys to the car. Ricehill testified that Curtis Posey had driven him in Ricehill's car into Devils Lake, and that Posey maintained possession of the car keys.

Posey did not testify at trial. On the day prior to trial Ricehill's trial counsel had a subpoena issued to compel Posey to appear at trial. However, the sheriff of Benson County was unable to serve the subpoena. Ricehill now argues that he received ineffective assistance of counsel because trial counsel failed to seek a subpoena for Posey at a time early enough to allow for service of the subpoena, denying Ricehill the testimony of a crucial witness.

I

We first consider Ricehill's argument that Section 62.1–02–01(1) is unconstitutional because it violates his right to keep and bear arms under Article I, Section 1, North Dakota Constitution. Section 62.1–02–01(1) prohibits a person previously convicted of a felony involving violence or intimidation from owning or possessing a firearm for a period of 10 years from the date of conviction or release, whichever is the latter.[2] In this case it was alleged that Ricehill possessed a revolver within 10 years of his release from an Iowa correctional facility to which he had been sentenced on a charge of murder in the second degree.

Article I, Section 1, of the North Dakota Constitution contains a guarantee of the right to keep and bear arms. This section provides:

"All individuals are by nature equally free and independent and have certain inalienable rights, among which are those of enjoying and defending life and liberty; acquiring, possessing and protecting property and reputation; pursuing and obtaining safety and happiness; *and to keep and bear arms for the defense of their person, family, property, and the state, and for lawful hunting, recreational, and other lawful purposes, which shall not be infringed.*" [Emphasis added.]

The guarantee of the right to keep and bear arms was only recently added to the North Dakota Constitution. The emphasized language above was added by means of an initiated amendment in November of 1984. This case presents the first occasion for this court to interpret this provision of the North Dakota Constitution.[3]

---

**1.** Although there was testimony concerning Ricehill's possession of the rifle, he was not charged with having possessed a rifle.

**2.** Section 62.1–02–01(1) provides:

"A person who has been convicted anywhere for a felony involving violence or intimidation, as defined in chapters 12.1–16 through 12.1–25, is prohibited from owning a firearm or having one in possession or under control for a period of ten years from the date of conviction or release from incarceration or probation, whichever is the latter."

**3.** In *State v. Swanson,* 407 N.W.2d 204 (N.D. 1987), we considered the dismissal by the trial court of a criminal complaint charging reckless

Ricehill argues that the right to bear arms is absolute. He argues that the language of the provision states that the right to bear arms "shall not be infringed," and that this means that the Legislature may place no limits on the possession of arms. We disagree with such a broad reading of the provision. Instead, we believe our Constitution's protection of the right to keep and bear arms is not absolute; although it prevents the negation of the right to keep and bear arms, that right nevertheless remains subject to reasonable regulation under the State's police power. As the Michigan Supreme Court stated in construing that State's right to bear arms, "regardless of the basis of the right to bear arms, the State, nevertheless, has the police power to reasonably regulate it." *People v. Brown*, 253 Mich. 537, 235 N.W. 245, 246 (1931).

In this case the Legislature prohibited the possession of firearms by persons who have previously committed serious crimes. It is patently reasonable for the Legislature to conclude that it is protecting the public welfare by enacting legislation that keeps firearms out of the hands of people who have shown a disposition to harm others. The Louisiana Supreme Court stated, in rejecting a State constitutional right-to-bear-arms challenge to its prohibition against possession of a firearm by a felon under a police-power rationale:

> "It is beyond question that the statute challenged in the instant case was passed in the interest of the public and as an exercise of the police power vested in the legislature. Its purpose is to limit the possession of firearms by persons who, by their past commission of certain specified serious felonies, have demonstrated a dangerous disregard for the law and present a potential threat of further or future criminal activity." *State v. Amos*, 343 So.2d 166, 168 (La.1977).

Another State which has concluded that its constitutional provision protecting the right to bear arms is to be tempered by the State's police power is Colorado. In *People v. Blue*, 190 Colo. 95, 544 P.2d 385 (1975), the defendants had been convicted of violating Colorado's law prohibiting the possession of a firearm by a person previously convicted of a felony. They challenged this conviction under Colorado's constitutional provision protecting the right to bear arms. That provision, which may appear to be more inclusive than that of North Dakota, states:

> "Right to bear arms. The right of no person to keep and bear arms in defense of his home, person and property, or in aid of the civil power when thereto legally summoned, shall be called in question; but nothing herein contained shall be construed to justify the practice of carrying concealed weapons." *Blue*, 544 P.2d at 390, quoting Art. II, § 13, Colo. Const.

The court rejected the defendants' argument that the right to bear arms was absolute and that the prohibition on firearm possession by a felon thus was unconstitutional. In so concluding, the court stated:

> "When rights come into conflict, one must of necessity yield. The conflicting rights involved here are the individual's right to bear arms and the state's right, indeed its duty under its inherent police power, to make reasonable regulations for the purpose of protecting the health, safety, and welfare of the people.
>
> "We do not read the Colorado Constitution as granting an absolute right to bear arms under all situations. It has limiting language dealing with defense of home, person, and property.... In our view, the statute here is a legitimate exercise of the police power.
>
> "' * * * To limit the possession of firearms by those who, by their past conduct, have demonstrated an unfitness to be entrusted with such dangerous instrumentalities, is clearly in the interest of the public health, safety, and welfare and within the scope of the Legislature's police power.' *Peo-*

endangerment on the basis of the right to bear arms. In *Swanson,* we declined to address the constitutional issue because we determined that the trial court erred in dismissing the complaint and that the right-to-bear-arms issue could not be resolved apart from facts which had yet to be determined.

ple v. Trujillo, 178 Colo. 147, 497 P.2d 1 [1978].

"To be sure, the state legislature cannot, in the name of the police power, enact laws which render nugatory our Bill of Rights and other constitutional protections. But we do not read this statute as an attempt to subvert the intent of Article II, Section 13. The statute simply limits the possession of guns and other weapons by persons who are likely to abuse such possession." 544 P.2d at 390–391. [Citations omitted.]

We agree with this analysis and thus the right to bear arms must be read in conjunction with the State's exercise of the police power. See also State v. Krantz, 24 Wash. 2d 350, 164 P.2d 453 (1945); Carfield v. State, 649 P.2d 865 (Wyo.1982), and cases cited therein.

■ Therefore, we hold that Section 62.-1–02–01(1) does not violate the right to keep and bear arms in Article I, Section 1, of the North Dakota Constitution.

## II

Ricehill next contends that he was denied effective assistance of counsel. Ricehill bases this claim on his trial counsel's request for a subpoena to compel Curtis Posey to appear at his trial. Ricehill claims that making the request the day before trial was unreasonable in that it did not provide sufficient time for service of the subpoena. Ricehill argues that because the sheriff of Benson County was unable to serve the subpoena in that one day, he was denied the presence of a witness whose testimony would have bolstered that of Ricehill. He argues that Posey could have testified that Ricehill could not have shown Schimetz the revolver because Posey had the car keys.

Effective assistance of counsel is guaranteed a defendant via the Sixth Amendment to the United States Constitution applied to the States through the Fourteenth Amendment, and by Article I, Section 12, of the North Dakota Constitution. In analyzing an ineffective-assistance-of-counsel claim this court utilizes the test established by the United States Supreme Court in Strick-land v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See, e.g., State v. Micko, 393 N.W.2d 741 (N.D. 1986); State v. Patten, 353 N.W.2d 30 (N.D.1984). Under the Strickland test a convicted defendant must establish two things. First, the defendant must show that his trial counsel's representation "fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S.Ct. at 2064. In doing so, he must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689, 104 S.Ct. at 2065. Second, the defendant must establish that trial counsel's conduct was prejudicial to him: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. at 2068.

■ In this case we decline to begin the ineffective-assistance-of-counsel analysis. We do so because the record before us is devoid of any indication of what Posey's testimony would have been, had he testified. The only indication we have of what that testimony would have been are the representations of Ricehill's counsel on appeal. While we do not dispute these representations, this court requires more than a mere representation of what the testimony would be; we require some form of proof, e.g., an affidavit by the proposed witness, or testimony in a post-conviction-relief proceeding.

■ This case presents a situation where it would have been better for Ricehill to seek relief in a post-conviction-relief proceeding pursuant to Chapter 29–32.1, N.D. C.C. At that proceeding Ricehill could have established a record of what Posey's testimony would have been. Generally, an ineffective-assistance-of-counsel claim is more effectively presented in a post-conviction-relief proceeding because the court in those proceedings is the court before which the trial was held. As the Minnesota courts have stated:

"... an appeal from a judgment of conviction is not the most appropriate way of raising an issue concerning the effectiveness of the trial counsel's representation because the reviewing court does not have the benefit of all the facts concerning why defense counsel did or did not do certain things." *State v. Hanson*, 366 N.W.2d 377 (Minn.App.1985); see also *State v. Grover*, 402 N.W.2d 163 (Minn.App.1987), and cases cited therein. We realize that in some situations it would be wasteful and onerous to the defendant to require him to seek post-conviction relief before appealing an ineffective-assistance-of-counsel claim, e.g., where a defendant has a second issue which might require reversal of the conviction. Therefore, we believe that it appears appropriate to establish procedures for the presentation of ineffective-assistance-of-counsel claims.

We believe that a decision by the Mississippi Supreme Court presents a procedure for the review of ineffective-assistance-of-counsel claims which is logical and fair. In *Read v. State*, 430 So.2d 832 (Miss.1983), the Mississippi court outlined the following procedure for such a review:

"(1) Any defendant convicted of a crime may raise the issue of ineffective assistance of counsel on direct appeal, even though the matter has not first been presented to the trial court. The Court should review the entire record on appeal. If, for example, from a review of the record, ... this Court can say that the defendant has been denied the effective assistance of counsel, the Court should also adjudge and reverse and remand for a new trial.

"(2) Assuming that the Court is unable to conclude from the record on appeal that defendant's trial counsel was constitutionally ineffective, the Court should then proceed to decide the other issues in the case. Should the case be reversed on other grounds, the ineffectiveness issue, of course, would become moot. On the other hand, if the Court should otherwise affirm, it should do so without prejudice to the defendant's right to raise the ineffective assistance of counsel issue via appropriate post-conviction proceedings.

If the Court otherwise affirms, it may nevertheless reach the merits of the ineffectiveness issue where (a) as in paragraph (1) above, the record affirmatively shows ineffectiveness of constitutional dimensions, or (b) the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed.

"(3) If, after affirmance as in paragraph (2) above, the defendant wishes to do so, he may then file an appropriate post-conviction proceeding raising the ineffective assistance of counsel issue. Assuming that his application states a claim, prima facie, he will then be entitled to an evidentiary hearing on the merits of that issue in the [trial court] wherein he was originally convicted. Once the issue has been formally adjudicated by the [trial court], of course, the defendant will have the right to appeal to this Court as in other cases." [Citations and footnote omitted.]

This system for the review of ineffective-assistance-of-counsel claims is:

"... designed to conform to constitutional imperatives while at the same time building as much judicial efficiency into the process as is feasible. For example, the reason why the Court should not automatically reserve the ineffective assistance of counsel issue for post-conviction proceedings in every case is based upon notions of judicial efficiency. If, ... the Court can look at the record on direct appeal and conclude that trial counsel was constitutionally ineffective, what is the point in requiring a separate proceeding and a separate evidentiary hearing? Or, if counsel stipulate that the record on direct appeal is adequate, the Court should generally resolve the issue on its merits.

"In all other cases, however, inasmuch as the ineffective assistance of counsel issue substantially raises issues of fact, an evidentiary hearing will be necessary. There is no point in holding such a hearing, however, and going to all of that time, trouble, expense and agony, if the

case is going to be reversed and remanded on other grounds. Where that occurs, any ineffectiveness of counsel will likely be mooted. Only in those cases where the Court cannot decide the ineffective assistance of counsel issue on the record presented on direct appeal and in those cases where the judgment of conviction is otherwise affirmed will it be necessary actually to hold evidentiary hearings." 430 So.2d at 842. [Footnote omitted.][4]

In this case we confront a situation outlined in paragraph (2) of the procedure we have adopted, i.e., we are unable to conclude from the record that Ricehill's trial counsel was constitutionally ineffective. We reject Ricehill's claim that the statute under which he was prosecuted is unconstitutional, and therefore we affirm his conviction. However, because Ricehill has raised an ineffective-assistance-of-counsel claim which we cannot dispose of on the record before us, we affirm without prejudice and with the understanding that Ricehill may raise the ineffective-assistance-of-counsel issue at a proceeding for post-conviction relief.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.

---

**4.** While the Mississippi court stated that counsel may stipulate to the adequacy of the record, this court will not be bound by such a stipulation, but will make an independent determination of the record's adequacy.