STATE of North Dakota, Plaintiff and Appellee,

v.

Jeffrey E. FREY, Defendant and Appellant.

Cr. No. 880166.

Supreme Court of North Dakota.

June 6, 1989.

Galen J. Mack (argued), Asst. State's Atty., Rugby, for plaintiff and appellee. Appearance by Charles D. Orvik, State's Atty.

Garaas Law Firm, Fargo, Lylea Dodson Critelli (argued), and Lawrence F. Scalise (argued), Des Moines, Iowa for defendant and appellant. Appearance by Jonathan T. Garaas.

GIERKE, Justice.

Jeffrey Eugene Frey appeals from judgments of conviction entered upon a jury verdict finding him guilty of murder and aggravated assault. We affirm.

Frey's convictions arose from the shooting death of Douglas J. Bjornson and shooting injuries sustained by Scott Ottum during the early morning of September 5, 1987, when Frey, Bjornson, Ottum, Sebastian Black, Aaron Black, Judd Foughty, Tim Bartlett, Lonnie Bartlett, Dennis Eckes, and Earl Haugland were crane hunting in Pierce County. Frey and Ottum were from the Fargo area, and the other eight hunters were from the Devils Lake area. Sebastian Black and Ottum, a former Devils Lake resident, were friends, and Sebastian had met Frey previously, but none of the other hunters had met Frey.

On the night of September 4 all the members of the hunting party camped near some abandoned farm buildings adjacent to the southeast corner of a field. About a half hour before sunrise on September 5 the Bartletts, Eckes, and Haugland, proceeded through a gate at the campsite to the north end of the field. A few minutes later a second group of hunters, Frey, Bjornson, Ottum, the Blacks, and Foughty, walked near a fence line along the south edge of the field. However, Ottum returned to the campsite because he was bothered by mosquitos, and the remaining five members of the second group continued into the field. The Blacks proceeded along the southern edge of the field, and Frey, Bjornson, and Foughty took positions in the field near some haystacks.

There were no eyewitnesses to the ensuing events. The State presented circumstantial evidence that Frey shot Bjornson two to three times with a twelve gauge shotgun and proceeded to the north end of the field where he shot a crane and left it in the field. According to the State, Frey then returned to the gate by the campsite, fired a shot at the passenger window and side of Bjornson's pickup, and proceeded to Bjornson's pickup where he fired three more shots in the direction of the abandoned buildings and his own pickup. Two pellets ricocheted off the buildings or pickup and hit Ottum in the head. Ottum testified that he was standing between the abandoned buildings and Frey's pickup and could not identify who shot at him. Ottum

testified that he then drove Haugland's car to the field, where Bjornson's body was found near a haystack. Ottum was taken to a hospital and the remaining hunters returned to the campsite where they found Frey lying in his pickup, holding his shotgun. Frey did not respond to questions by members of the hunting party. Law enforcement officials thereafter arrived and Frey stated that he had not been hunting that morning and that his gun had not been fired. He denied any knowledge of the shootings.

Frey was charged with murder for Bjornson's death and attempted murder for Ottum's injuries. Frey's counsel[1] requested an instruction on self-defense but specifically objected to instructing the jury on lesser included offenses of any kind. The State requested an instruction on a lesser included offense of attempted murder. The court instructed the jury on murder, self-defense, attempted murder and aggravated assault, but did not instruct the jury on lesser included offenses of murder. Frey was found guilty of murder and aggravated assault, and he has appealed.

Relying on *State v. Leidholm*, 334 N.W. 2d 811 (N.D.1983), Frey contends that because the trial court gave an instruction on self-defense, it was necessary to instruct the jury on the lesser included offenses of murder[2] and the trial court erred in failing to so instruct the jury. Frey concedes that his trial counsel specifically objected to instructing the jury on lesser included offenses of murder, but argues that the giving of those instructions cannot be waived.

■ Generally, absent a request for an instruction on a lesser included offense, it is not error for the trial court not to give such an instruction. *E.g., State v. Motsko*, 261 N.W.2d 860 (N.D.1977) [disagreeing with the rule from some jurisdictions that, even in the absence of a request and irrespective of the evidence presented in a case, a trial court must instruct on all

included offenses]. *See also State v. Champagne*, 198 N.W.2d 218 (N.D.1972). Although the trial court is initially responsible for correctly instructing the jury on the law of a case, both the prosecution and defense have a responsibility to request and object to specific instructions. *State v. Klose*, 334 N.W.2d 647 (N.D.1983); *State v. Allery*, 322 N.W.2d 228 (N.D.1982).

■ Those principles are in accord with a defendant's right to waive instructions on lesser included offenses as a trial tactic. *Mosley v. State*, 482 So.2d 530 (Fla.Dist.Ct. App.1986) aff'd. 492 So.2d 1071 (1986); *Black v. State*, 279 So.2d 909 (Fla.Dist.Ct. App.1973); *Clements v. State*, 284 So.2d 700 (Fla.Dist.Ct.App.1973); *Neuenfeldt v. State*, 29 Wis.2d 20, 138 N.W.2d 252 (1965). A defendant who waives instructions on lesser included offenses takes an all-or-nothing risk that the jury will not convict of the greater offense. Those types of decisions involving waiver are not unknown in our criminal justice system where, for example, a criminal defendant can waive a trial and plead guilty or waive a jury trial and receive a bench trial. *See also* Section 1-01-08, N.D.C.C.

■ Although we generally cannot consider an alleged error raised for the first time on appeal, we can notice an error in jury instructions under Rule 52(b), N.D.R. Crim.P., if the alleged error infringes upon substantial rights of the defendant. *State v. Kraft*, 413 N.W.2d 303 (N.D.1987); *State v. Halvorson*, 346 N.W.2d 704 (N.D.1984); *State v. Trieb*, 315 N.W.2d 649 (N.D.1982).

However, there is a vast difference between a defendant raising an issue on appeal about allegedly incorrect jury instructions where there has been no objection [*Halvorson, supra; Trieb, supra*], or no request for other instructions in the lower court [*Kraft, supra*], and a defendant raising an issue on appeal about jury instructions where the defendant has specifically

---

1. The attorneys representing Frey on this appeal did not represent Frey at trial.

2. In *State v. Leidholm, supra,* 334 N.W.2d at 821, we said:

"Moreover, any time the court instructs a jury on self-defense, it must of *necessity* include a special instruction on manslaughter as well as an instruction on negligent homicide." [Emphasis added.]

requested that the jury not be given those instructions. In *State v. Trieb, supra,* 315 N.W.2d at 655, fn. 8, we recognized that difference when we cautioned that the "failure to object [to jury instructions] as a deliberate trial tactic designed to 'sandbag' the judicial process, will not be tolerated by this court." *See State v. Miller,* 388 N.W. 2d 522 (N.D.1986) [declining to review an alleged error under Rule 52(b), N.D.R. Crim.P., where the failure to raise it below constituted a tactical decision]. That difference is also a corollary of our well established rule that a party to a criminal proceeding cannot complain about errors invited upon the court. *State v. Huber,* 361 N.W.2d 236 (N.D.), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2339, 85 L.Ed.2d 855 (1985); *State v. Hepper,* 316 N.W.2d 338 (N.D. 1982); *State v. Sheldon,* 301 N.W.2d 604 (N.D.), *cert. denied,* 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 204 (1981). We do not read *State v. Leidholm, supra,* so narrowly as to preclude a defendant, as a matter of trial tactics, from waiving jury instructions on the lesser included offenses of murder where a self-defense instruction is given.

■ In this case Frey's trial counsel specifically objected to instructing the jury on any lesser included offenses as a "trial tactic." Frey therefore took that all-or-nothing risk and cannot now complain that the jury convicted him of the greater offense. We disagree with Frey's characterization that counsel's action was not a trial tactic because it was done before the jury was picked and the evidence heard. We specifically note that counsel had the opportunity to request those instructions after the evidence was presented, but apparently relied upon the previous decision to object to giving those instructions.

Moreover, we are not persuaded by Frey's argument that instructions on lesser included offenses of murder were mandated because the trial court instructed the jury on aggravated assault, a lesser included offense of attempted murder. First, the death of Bjornson and the injuries to Ottum involved two separate shooting incidents which, if properly requested, may have warranted different factual considerations about the propriety of instructions on lesser included offenses. More importantly, however, the State specifically requested a lesser included instruction on the attempted murder charge, and the trial court obliged.

Because Frey's trial counsel specifically objected to instructions on lesser included offenses of murder, Frey waived any right to those instructions that he might otherwise have had, and the trial court did not err in failing to instruct the jury on lesser included offenses of murder.[3]

■ Frey next contends that, pursuant to Section 12.1–16–01, N.D.C.C.,[4] the trial

---

**3.** Because of our resolution of this issue we express no opinion about whether or not instructions on the lesser included offenses of murder would have been appropriate in this case. For discussions on when lesser included offense instructions are appropriate, *see State v. Langan,* 410 N.W.2d 149 (N.D.1987); *State v. Gross,* 351 N.W.2d 428 (N.D.1984); *State v. Skjonsby,* 319 N.W.2d 764 (N.D.1982); *State v. Piper,* 261 N.W.2d 650 (N.D.1977); *State v. Houser,* 261 N.W.2d 382 (N.D.1977). *See also State v. Thiel,* 411 N.W.2d 66 (N.D.1987), for a recent discussion on the availability of inconsistent defense theories.

We also note that in *Schmuck v. United States,* — U.S. —, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989), the United States Supreme Court adopted the "elements" approach under Rule 31(c), F.R.Crim.P., for determining when one offense is a lesser included offense of another: "Under this test, one offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense. Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c)."

**4.** Section 12.1–16–01, N.D.C.C., provides in part:
"1. A person is guilty of murder, a class AA felony, if he:
"a. Intentionally or knowingly causes the death of another human being;
"b. Causes the death of another human being under circumstances manifesting extreme indifference to the value of human life;
    \*   \*   \*   \*   \*   \*
"Subdivisions a and b shall be inapplicable in the circumstances covered by subsection 2.
"2. A person is guilty of murder, a class A felony, if the person causes the death of another human being under circumstances which would be class AA felony murder, except that the person causes the death under

court was required to instruct the jury that in order to find Frey guilty of murder under Section 12.1–16–01(1), N.D.C.C., the State was required to prove the absence of "extreme emotional disturbance for which there is reasonable excuse," under Section 12.1–16–01(2), N.D.C.C. Frey concedes that the same argument was rejected in *State v. Dilger*, 338 N.W.2d 87 (N.D.1983), but asserts that the Legislature subsequently amended the law, 1985 N.D.Sess. Laws ch. 174, to require the State to prove the absence of extreme emotional distress.

Initially, we note that Frey did not raise that issue in the trial court. Moreover, Frey was charged with murder, a class AA felony, under Sections 12.1–16–01(1)(a) and (b), N.D.C.C., and not with murder, a class A felony, under Section 12.1–16–01(2), N.D.C.C. The language of the 1985 amendments did not change the law as argued by Frey, and, instead, changed the grade of conduct currently specified in Section 12.1–16–01(2), N.D.C.C., from manslaughter, a class B felony, to murder, a class A felony. The rationale of *Dilger* is still applicable, and we decline Frey's invitation to reconsider that case.

■ Frey next contends that there was insufficient evidence to support his convictions. He argues that there was no evidence to support a finding that he caused Bjornson's death "intentionally or knowingly" or under "circumstances manifesting extreme indifference to the value of human life." *See* Section 12.1–16–01(1), N.D.C.C.

In *State v. Ohnstad*, 359 N.W.2d 827, 834–835 (N.D.1984), we outlined our standard of review of sufficiency of the evidence:

"Our duty is to sustain a criminal conviction based upon a jury verdict if, upon reviewing the evidence in a light most favorable to the verdict, we determine

that there is substantial evidence to support it.

\*   \*   \*   \*   \*   \*

"A verdict based upon circumstantial evidence, however, carries the same presumption of correctness as other verdicts and will not be disturbed unless wholly unwarranted.... A conviction may be justified on circumstantial evidence alone if it is of such probative force as to enable the trier of fact to conclude that the defendant is guilty beyond a reasonable doubt.... Our role as an appellate court is to merely *review the record to determine if there is competent evidence that allows the jury to draw an inference reasonably tending to prove guilt, and fairly warranting a conviction....* Upon appeal to this Court, it is the defendant's burden to show that the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt...." [Emphasis in original; Citations omitted.]

Bjornson died from massive blood loss from wounds to his chest. The State presented circumstantial evidence to demonstrate that Bjornson was killed and Ottum was wounded with Frey's twelve gauge shotgun. Thirteen twelve gauge shotgun shell casings were found in four different locations in the area. Microscopic comparisons of those thirteen shells with other test shells fired from Frey's gun demonstrated that the thirteen shells were fired from Frey's shotgun. Six shell casings and two unfired shells were found by a haystack about sixty yards from where Bjornson's body was found. Three overpowder wads and two filler wads of the type found in twelve gauge shotgun shells were also found between the shell casings and where Bjornson's body was found. The majority of pellet wounds on Bjornson's body were on the right front side of his upper body, but he also had pellet wounds in his right buttock and on the

the influence of extreme emotional disturbance for which there is reasonable excuse. The reasonableness of the excuse must be determined from the viewpoint of a person in his situation under the circumstances as he believes them to be. An extreme emotional

disturbance is excusable, within the meaning of this subsection only, if it is occasioned by substantial provocation, or a serious event, or situation for which the offender was not culpably responsible."

back of his left thigh. There was evidence that Bjornson's wounds were inconsistent with him pointing his gun at an assailant in a manner suggesting self-defense.

There was also evidence that after Bjornson was shot, other members of the hunting party saw an unidentified person shoot a crane, leave it in the field, and walk back towards the campsite without responding to any inquiries. Those members of the hunting party testified that they were unable to identify the person because it was dark, and they also testified that they had not previously met Frey. Three shell casings from Frey's gun were found in that area.

At the campsite one shell casing from Frey's shotgun was found by the gate and three shell casings were found by Bjornson's pickup, which was parked about two hundred feet from the abandoned buildings and Frey's pickup. Ottum testified that he was standing between the abandoned buildings and Frey's pickup when he was hit. He also testified that he saw someone standing by Bjornson's pickup but, because of blood in his eyes, he could not identify the person. A neutron activation analysis of pellets recovered from Bjornson's body, Ottum's body, the pickups, and the abandoned buildings established that those pellets were from the same box of shells, or a box manufactured at the same time and place, as an unfired shell found in Frey's gun when he was arrested. Although Frey chose not to testify at trial, evidence was presented at trial about his statements to law enforcement officials on September 5 and those statements were contrary to the physical evidence and other testimony presented at trial.

We conclude that there was competent evidence, viewed in the light most favor-

able to the verdict, to permit the jury to reasonably draw an inference that Frey caused Bjornson's death either "intentionally or knowingly" or "under circumstances manifesting extreme indifference to the value of human life." We also conclude that there was sufficient evidence, viewed in the light most favorable to the verdict, to find Frey guilty of aggravated assault[5] for the injuries inflicted on Ottum.

■ Frey next contends that, if his trial counsel waived instructions on lesser included offenses of murder, that action constituted ineffective assistance of counsel under the Sixth Amendment of the United States Constitution.

In *State v. Ricehill,* 415 N.W.2d 481 (N.D.1987), we outlined the standards for establishing ineffective assistance of counsel, noting that generally such claims are most effectively presented before the trial court in post-conviction relief proceedings. *See State v. Brown,* 420 N.W.2d 5 (N.D. 1988); *State v. Denney,* 417 N.W.2d 181 (N.D.1987).

In *Ricehill, supra,* we said that when ineffective assistance of counsel is raised on direct appeal of a criminal conviction, we will look at the entire record and if we cannot readily determine that assistance of trial counsel was plainly defective, and no other grounds for reversal exist, the defendant can later pursue his claim at a post-conviction proceeding where an adequate record can be developed.

In this case, as in *Ricehill,* we are unable to conclude from the record that Frey's counsel was constitutionally ineffective. Frey may raise that issue at an appropriate proceeding for post-conviction relief. *See State v. Brown, supra; State v. Denney, supra.*

---

5. Section 12.1–17–02, N.D.C.C., provides:

"*12.1–17–02. Aggravated assault.* A person is guilty of a class C felony if that person:

"1. Willfully causes serious bodily injury to another human being;

"2. Knowingly causes bodily injury or substantial bodily injury to another human being with a dangerous weapon or other weapon, the possession of which under the circum-

stances indicates an intent or readiness to inflict serious bodily injury;

"3. Causes bodily injury or substantial bodily injury to another human being while attempting to inflict serious bodily injury on any human being; or

"4. Fires a firearm or hurls a destructive device at another human being."

**674**

The judgments of conviction are affirmed.

ERICKSTAD, C.J., and MESCHKE, J., and PEDERSON, Surrogate Justice, concur.

VANDEWALLE, J., disqualified himself subsequent to oral argument.

VERNON R. PEDERSON, S.J., sitting in place of LEVINE, J., disqualified.