**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Thomas Gordon WRIGHT, Defendant and Appellant.**

**Crim. No. 900416.**

Supreme Court of North Dakota.

May 21, 1991.

Steven D. Mottinger, Fargo, for defendant and appellant.

Stephen R. Dawson, Asst. States Atty., Fargo, for plaintiff and appellee.

ERICKSTAD, Chief Justice.

Thomas Gordon Wright appeals from the judgment of conviction entered in the District Court for the East Central Judicial District following a jury verdict which found Wright guilty of attempted gross sexual imposition. We affirm the conviction.

On November 10, 1989, the complainant, her father, and Bradley Phelps were socializing and playing pool at the River Queen bar in Fargo, North Dakota. Wright, who was a casual acquaintance of the complainant's father, subsequently joined the group and they all continued to socialize and play pool.

Sometime at or near closing time three of the group decided to travel to Phelps' apartment which was located near the River Queen bar. The complainant's father did not accompany the group. While at Phelps' apartment, the parties listened to music, played cards and "quarters," and consumed beer and wine. Eventually, Phelps fell asleep at the kitchen table. Viewing the evidence in the light most favorable to the verdict, the following recitation of facts discloses what transpired thereafter.

At approximately 4:00 or 5:00 a.m. on November 11, 1989, the complainant decided to leave Phelps' apartment. After reaching her car, which was located at the apartment complex parking lot, the complainant discovered that she had left her cigarettes in Phelps' apartment. Upon returning to the apartment to retrieve her cigarettes, she encountered Wright, who was lying on the couch. As she turned to leave, Wright grabbed, shook, and threw the complainant to the floor into a kneeling position. Wright then pounced on top of her, grabbed her by the throat/neck, hit her with his fists, and "banged" her forehead on the floor.

The complainant managed to escape by pushing her elbow into his stomach, and reached the telephone to dial 911, the emergency telephone number. Wright interrupted the call, took the phone receiver from the complainant's hand, hit the complainant in the back of the head with the phone receiver, and hung up the phone. The struggle continued and the phone began to ring. The complainant reached for the phone cord and succeeded in pulling the receiver off the hook. She could hear a voice on the phone ask if she needed help, and she responded, "Yes, I do." The voice then stated, "The police are on the way." Wright hung up the phone for a second time.

He then pulled at the complainant's shirt, opening the two top buttons and grabbing a piece of her brassiere, while once again wrestling her to the floor. The complainant testified, "I·was on my back at that point. And he was in the kneeling position on top of the upper part of my legs and he was kneeling over. And he had me down to the floor by the back of my hair and my jacket. And he wouldn't let me up."

The complainant further testified that while on top of her, Wright "socked" her in the face and said: "You women are all bitches and sluts and you all deserve what's comin' to you. And you all deserve to be raped"; "I can tell you are the type who's never had a big dick"; and, "I got a whopper and you are going to get it."

At some point in the struggle, the complainant's earring was torn from her ear and her ear began to bleed. She fought back and eventually managed to escape. Wright fled the apartment and was apprehended a short time later at a nearby convenience store. He was subsequently charged with attempted gross sexual imposition.

Wright testified that while the group was playing "quarters" he and the complainant had a friendly wrestling match, which may have been when her earring was pulled from her ear. He also testified that after playing "quarters," he fell asleep on either the floor or couch. Sometime between 5:00 and 5:30 in the morning he was awakened by the complainant, who he thought was trying to steal his wallet. He was upset and compared the complainant to his ex-wife, possibly using the words "whore" and "bitch." A short pushing match ensued during which time the complainant hit Wright. Eventually, the complainant fell to the floor, and immediately became hysterical. The complainant rushed to the telephone to call the police. Wright hung up the phone and called his girlfriend who instructed him to leave. He was arrested shortly thereafter.

Wright asserts two issues on appeal: (1) the evidence is insufficient to support a conviction for the offense of attempted gross sexual imposition; and (2) it was obvious error for the district court not to instruct the jury on lesser included offenses.

### I. Insufficient Evidence.

Our review of issues concerning the sufficiency of evidence is well-settled. On appeal, we do not weigh the evidence, resolve conflicts in the evidence, or judge the credibility of the witnesses; those are matters properly left to the province of the trier of fact. *E.g. City of Mandan v. Thompson*, 453 N.W.2d 827, 829 (N.D.1990) (quoting *State v. Haugen*, 448 N.W.2d 191, 196–97 (N.D.1989)); *State v. Manke*, 328 N.W.2d 799, 805 (N.D.1982). "[I]nstead, we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction." *Manke*, 328 N.W.2d at 805.

Wright contends that the statements he made are not sufficient to elevate the alleged assault into attempted gross sexual imposition. In other words, Wright claims the evidence fails to show that he made a substantial step toward the crime of gross sexual imposition.[1] In *State v. Saul*, we said:

"A person can be found guilty of a criminal attempt if 'acting with the kind of culpability otherwise required for commission of a crime, he intentionally engages in conduct which, in fact, constitutes a substantial step toward commission of the crime.' Section 12.1–06–01(1), N.D.C.C. A 'substantial step' is defined in Section 12.1–06–01(1) as 'any conduct which is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime.' "

346 N.W.2d 282, 284 (N.D.1984).

In *Saul*, the defendant grabbed the victim and demanded that the victim relin-

1. The crime of gross sexual imposition is defined in Section 12.1–20–03 of the North Dakota Century Code as follows:
   "*Gross sexual imposition.*
   1. A person who engages in a sexual act with another, or who causes another to engage in a sexual act, is guilty of an offense if:
      a. He compels the victim to submit by force or by threat of imminent death, serious bodily injury, or kidnapping, to be inflicted on any human being;
      b. He or someone with his knowledge has substantially impaired the victim's power to appraise or control his or her conduct by administering or employing without his or her knowledge intoxicants or other means with intent to prevent resistance;
      c. He knows that the victim is unaware that a sexual act is being committed upon him or her;
      d. The victim is less than fifteen years old; or

   e. He knows or has reasonable cause to believe that the other person suffers from a mental disease or defect which renders him or her incapable of understanding the nature of his or her conduct.
   2. A person who engages in sexual contact with another, or who causes another to engage in sexual contact, is guilty of an offense if:
      a. The victim is less than fifteen years old; or
      b. He compels the victim to submit by force or by threat of imminent death, serious bodily injury, or kidnapping, to be inflicted on any human being.
   3. An offense under this section is a class A felony if in the course of the offense the actor inflicts serious bodily injury upon the victim, or if his conduct violates subdivision a or d of subsection 1. Otherwise the offense is a class B felony."

quish his watch and wallet. We upheld Saul's conviction for attempted theft of property after concluding that there was "[s]ubstantial evidence to prove that Saul, by grabbing the shoulder of Tim Lester's jacket and demanding his wallet and watch, intentionally engaged in conduct which constituted a substantial step toward committing the crime of theft of property." *Id.* at 285.

■ Having reviewed the evidence presented at trial in a light most favorable to the verdict and reasonable inferences therefrom, we conclude that there was sufficient evidence for the jury to have determined that Wright intentionally engaged in conduct which constituted a substantial step in the commission of the offense of gross sexual imposition. Wright physically attacked the complainant. An earring was torn from her ear and her ear began to bleed. Wright pulled at the complainant's shirt, opening the top two buttons. He grabbed her brassiere. While kneeling on top of the complainant, after throwing her to the floor, Wright "socked" her in the face and, among other things, said: "I got a whopper and you are going to get it."

■ Wright also asserts that the evidence is insufficient for a conviction because most, if not all, of his statements were made after most of the punches and the altercation had ended. The testimony of the complainant is otherwise, and as we have previously noted, we will not weigh conflicting evidence on appeal. *Manke,* 328 N.W.2d at 805. Even so, we have recently stated that "[t]he defendant's conduct both before and after the offense may be considered as circumstantial evidence of the requisite criminal intent." *State v. Lovejoy,* 464 N.W.2d 386, 389 (N.D.1990) (citing *State v. Merrill,* 428 N.W.2d 361 (Minn. 1988)). We believe this assertion is also without merit.

## II. Lesser Included Offenses.

Wright's second assertion is that it was obvious error, pursuant to N.D.R.Crim.P. 52(b),[2] for the district court to not instruct the jury on lesser included offenses. We note that Wright has conceded both in this written brief and during oral argument that it was a deliberate trial tactic on the part of the defense counsel not to request instructions to the jury on lesser included offenses.

■ Generally, when the defendant has failed to request an instruction on lesser included offenses, there is no error for failure to give such instructions. *E.g. State v. Wiedrich,* 460 N.W.2d 680, 682 (N.D.1990). *See State v. Motsko,* 261 N.W.2d 860 (N.D.1977) (rejecting the rule that the court must instruct on all lesser included offenses, even when there has been no request for instructions and irrespective of the facts). This is particularly true when the defendant, as a matter of trial tactics, deliberately waives his or her right to instructions on lesser included offenses. *State v. Stoppleworth,* 442 N.W.2d 415, 416–17 (N.D.1989); *State v. Frey,* 441 N.W.2d 668, 670 (N.D.1989). A decision to employ an all-or-nothing trial tactic does not amount to obvious error pursuant to N.D.R.Crim.P. 52(b). *E.g. Stoppleworth,* 442 N.W.2d at 417. It is clear that the defendant made a tactical choice not to instruct the jury on lesser included offenses. Therefore, we find no error in the failure to instruct on lesser included offenses.

Wright offers additional support for his assertion by claiming that the failure to instruct on lesser included offenses is obvious error because the evidence provided at trial does not support a conviction for attempted gross sexual imposition. Having previously concluded that sufficient evidence was provided to support such a conviction, we find this argument to be without merit.

**2.** *"RULE 52. HARMLESS ERROR AND OBVIOUS ERROR*

     \*     \*     \*     \*     \*     \*

   (b) *Obvious Error.* Obvious errors or defects affecting substantial rights may be no-

ticed although they were not brought to the attention of the court."
N.D.R.Crim.P., 52(b).

Wright further asserts that he should not be penalized for trial tactics employed by his counsel. In *Frey*, we were confronted with essentially the same argument when the defendant asserted that his trial counsel's waiver of instructions on lesser included offenses constituted ineffective assistance of counsel under the Sixth Amendment of the United States Constitution. 441 N.W.2d at 673.

■ Generally, claims of ineffective counsel are properly reserved for post-conviction relief proceedings to insure the development of an adequate record. *Id.* In *Frey* we said:

"[W]hen ineffective assistance of counsel is raised on direct appeal of a criminal conviction, we will look at the entire record and if we cannot readily determine that assistance of trial counsel was plainly defective, and no other grounds for reversal exist, the defendant can later pursue his claim at a post-conviction proceeding where an adequate record can be developed."

*Id.* (citing *State v. Ricehill*, 415 N.W.2d 481 (N.D.1987)).

In this case, as in *Frey* and *Ricehill*, there is nothing in the record from which we could conclude that Wright's constitutional guarantee of effective counsel was not met.

For the reasons stated in this opinion, we affirm the conviction.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.