STATE of North Dakota, Plaintiff
and Appellee,

v.

Maurice THILL, Defendant
and Appellant.

Cr. No. 900314.

Supreme Court of North Dakota.

July 31, 1991.

Merle Ann Torkelson, State's Atty., Washburn, for plaintiff and appellee.

Feldner & Danielson, Mandan, for defendant and appellant; argued by Rodney K. Feldner, Mandan.

GIERKE, Justice.

Maurice Thill was convicted by a jury on three counts of committing gross sexual imposition and was sentenced to the state penitentiary for three concurrent four-year terms. Retaining new counsel, Thill appealed from the judgment of conviction. We affirm.

Thill was charged with violating Section 12.1–20–03(2)(a), N.D.C.C., which makes it a crime to have sexual contact with a person who is under fifteen years old. Sexual contact is defined under Section 12.1–20–02(4), N.D.C.C., as "any touching of the sexual or other intimate parts of the person for the purpose of arousing or satisfying sexual or aggressive desires." More specifically, Thill was charged with having sexual contact with three nephews, L.J., C.W., and T.W., (hereinafter Larry, Craig, and Tom, pseudonyms). At the time of the alleged violations the boys were approximately five, six, and nine years old, respectively.

Thill asserts on appeal that he was denied a fair trial because the prosecuting attorney made an improper comment during closing argument, to which Thill's attorney was not allowed to respond and for which no cautionary instruction was given to the jury by the trial court. During closing argument Thill's attorney was allowed to fully argue to the jury that his client was an innocent victim of a "witch hunt" by the prosecutor's office. His counsel analogized this case with the "witch mania" that occurred many years ago in England and spread to the United States where innocent persons were arbitrarily accused of being witches possessed by the devil and summarily persecuted. According to defense counsel's argument to the jury, this madness continued until the colonists suddenly became convinced that the accused were innocent and that the proceedings themselves were being carried on by the work of the devil. Once this madness subsided even the victims realized that there were no witches and that they had not been victimized or bewitched. In concluding this tale to the jury, Thill's attorney postulated that Thill's three nephews were probably the victims of "this great hysteria whereby people have spent the last two years, three years, virtually on a daily basis—once a week, anyway—telling them, confirming with them, that they've been sexually abused."

In response to the foregoing argument the prosecuting attorney made the following brief response during his rebuttal argument:

"And I do have to respond a little bit to Ralph. You know, Ralph, that the State charges only what we feel we can prove. We are busy, we are hardworked prosecutors, and we do not go about making more work for ourselves."

The trial court then told Thill's attorney, who had not raised an objection to the prosecutor's remark, that he would be permitted to respond, and the following exchange occurred:

"MR. VINJE: Mercer County, for which he has been the state's attorney, has had a group of citizens, concerned citizens—

"THE COURT: No, counsel. I'll not permit you to proceed on that subject as a response to Mr. Duppler's statement.

"MR. VINJE: Well, your Honor—

"THE COURT: Mr. Duppler's statement was sufficiently general that I'll

handle it at this point. Any other comments?

"MR. VINJE: No, Your Honor."

The court then gave the jury closing instructions which included an admonition that the arguments of counsel are not evidence and that the jury was to be solely guided by the evidence in the case.

■ Thill's trial counsel did not object to the prosecutor's rebuttal statement and did not ask for a curative instruction. Consequently, this issue was not properly preserved for review on appeal, and our inquiry is limited to determining whether the trial court committed obvious error affecting substantial rights of the defendant. *State v. Thiel*, 411 N.W.2d 66 (N.D.1987). The power to notice obvious error is one which we exercise cautiously and only in exceptional circumstances where a serious injustice has been done to the defendant. *State v. Johnson*, 379 N.W.2d 291 (N.D.), *cert. denied* 475 U.S. 1141, 106 S.Ct. 1792, 90 L.Ed.2d 337 (1986).

■ The control and scope of opening and closing arguments are left to the discretion of the trial court. *State v. Schimmel*, 409 N.W.2d 335 (N.D.1987). Defense counsel was allowed to argue to the jury, in substantial detail, that his client was the victim of a modern day witch hunt by the prosecution and to intimate that the people who assisted in the investigation and bringing of the charges suffered from a "great hysteria" causing them to convince Thill's nephews that they had been sexually abused. By doing this, defense counsel invited the prosecutor's remarks to which Thill now objects. We do not condone the prosecutor's statements, which do not relate to the evidence in the record. However, they do not rise to the level of obvious error, especially where the trial court gave defense counsel an opportunity to respond and instructed the jury that counsels' arguments are not evidence and should be disregarded. We conclude that obvious error was not committed by the trial court in its handling of the closing arguments.

Thill asserts on appeal that there was insufficient evidence to sustain the jury's verdict. We disagree.

■ In reviewing the sufficiency of the evidence to convict, we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction. *State v. Schill*, 406 N.W.2d 660 (N.D.1987). A conviction rests upon insufficient evidence only when no rational factfinder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefits of all inferences reasonably to be drawn in its favor. *Id.* It is the exclusive function of the jury to weigh the evidence and judge the credibility of witnesses, and we will not substitute our judgment for that of the jury where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction. *Id.*

On each count, the State was required to establish beyond a reasonable doubt that Thill had sexual contact with a child less than fifteen years old. The three victims testified at the trial about the sexual abuse perpetrated against them by Thill. Larry, the youngest, testified that Thill put string, rocks and a stick inside his "butt." He also testified that Thill bit his "nook" and placed his tongue inside his mouth. Although Larry had difficulty remembering where these incidents occurred, counsel stipulated that Larry, while testifying at a deposition, stated that Thill had sexual contact with him in McLean County.

Craig testified about an incident that occurred while sleeping in a camper with Thill on his grandfather's farm in McLean County. He testified that Thill reached into his pajamas and pulled his penis. He testified that Tom, who was sleeping with them, then hit Thill and the boys ran into a room in the house and locked the door. Craig also testified that on another occasion Thill "kicked me in the nook."

Perhaps the most damaging testimony was given by Tom, the eldest of the three

cousins, who was able to remember in detail the nature of the incidents of sexual abuse perpetrated by Thill. Regarding the camper incident Tom testified:

"Well, it was right before bed, and [Craig] and I went to the bathroom before we went to bed. Okay, [Craig] was in there, going to the bathroom. He [Thill] opened the door, grabbed me and pulled down my bottom part of my pajamas. He [Thill] grabbed onto both [Craig's] and my penis, and squeezed until you go to the bathroom."

Tom also testified that Thill on various occasions kicked him in the private parts and hit his penis with a bat that had "sharp point of nails sticking out of it all around the top." On cross-examination Thill conceded that he owns a baseball bat with "four or six" nails on the head of the bat, but testified on redirect that he put nails in the bat to use it as a weapon against intruders.

The victims' testimony was corroborated by their grandmother. Although she did not witness the incidents of sexual abuse, she testified that both Larry and Craig would complain to her about Thill hitting them in the private parts and on the butt. She testified that on one occasion when Larry was in the basement with Thill she went down to check on them. Larry was going to the bathroom, and when she went to help him she noticed that he had a bite mark on his penis. She also testified that on another occasion she noticed that after Larry went to the bathroom the toilet was full of blood and that he was "always complaining about his rectum, constantly complaining that his butt hurt."

Viewing the entire record in this case in the light most favorable to the verdict, we believe that a rational factfinder could have found Thill guilty beyond a reasonable doubt on all three counts. We conclude, therefore, that there was sufficient evidence to sustain the jury's verdict.

Thill also asserts on appeal that he received ineffective assistance by his trial attorney. More specifically, Thill alleges that his trial attorney acted improperly in (1) allowing witnesses to testify about sexual contact that occurred in places other than McLean County, (2) in agreeing to stipulate that Larry had testified by deposition prior to the trial that Thill committed acts of sexual contact with him in McLean County, and (3) in failing to object to the prosecutor's improper rebuttal statements.

■ We have repeatedly stated that ineffective assistance of counsel claims should generally be raised in post conviction proceedings where an evidentiary record can be made. E.g., *State v. Ricehill,* 415 N.W.2d 481 (N.D.1987). However, when an ineffective assistance of counsel argument is urged on direct appeal we will review the record to determine if assistance of counsel was plainly defective, requiring a reversal of the conviction. *See State v. Sayler,* 443 N.W.2d 915 (N.D.1989). If from an examination of the record we cannot conclude that assistance of counsel was plainly defective, and if no other grounds for reversal exist, we will affirm the judgment without prejudice to the defendant pursuing an ineffective assistance of counsel claim at a post conviction proceeding where an adequate record can be developed. *See State v. Frey,* 441 N.W.2d 668 (N.D.1989).

Effective assistance of counsel is guaranteed to a defendant via the Sixth Amendment to the United States Constitution applied to the states through the Fourteenth Amendment, and by Article I, Section 12, of the North Dakota Constitution. To establish ineffective assistance of counsel one must first show that counsel's representation fell below an objective standard of reasonableness and then must show that counsel's conduct was prejudicial to him, i.e. a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Ricehill, supra,* at 484.

■ The witnesses, and particularly Tom, testified about sexual contact with the defendant that occurred in places other than McLean County. Although defense counsel did not object to the testimony, the jury was kept informed about where all incidents occurred and was instructed that defendant could only be convicted if there

had been a violation of the statute in McLean County, as charged. We do not believe that defense counsel's failure to object to this testimony constituted plainly defective representation under these circumstances.

The prosecutor videotaped a deposition of Larry for possible use at the trial in anticipation that Larry might be residing in Germany and unavailable to testify. Larry did testify at the trial but had trouble remembering where the sexual contacts had occurred. In reviewing the record of in-chamber proceedings it was obvious that defense counsel did not want the videotape shown to the jury, because it apparently contained additional damaging testimony. The trial court showed some willingness to allow the State to show portions of the videotape to the jury, if necessary. Defense counsel then decided to stipulate that Larry, in giving his deposition, testified that he had sexual contact with Thill in McLean County. With that stipulation, the State did not attempt to show the videotaped testimony to the jury. The error of defense counsel's strategy in handling this matter, if any, is not obvious.

In discussing the first issue on appeal, we explained the circumstances surrounding the alleged improper comments by the prosecutor during rebuttal statement and defense counsel's failure to object to those comments. We cannot conclude from this record that defense counsel erred in failing to object to the prosecutor's brief comment in response to defense counsel's "witch hunt" argument to the jury.

Having reviewed the entire record in this case we cannot conclude that the assistance of defense counsel at trial was constitutionally defective. Our review of this issue does not prejudice Thill's right to raise an ineffective assistance of counsel issue by means of appropriate post conviction proceedings.

The judgment of conviction is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, MESCHKE and LEVINE, JJ., concur.