STATE of North Dakota, Plaintiff
and Appellee,

v.

Alvin E. HERSCH, Defendant
and Appellant.

Cr. Nos. 880264–880272.

Supreme Court of North Dakota.

Aug. 15, 1989.

James M. Vukelic (argued), Asst. Atty. Gen., Atty. Gen's Office, Bismarck, for plaintiff and appellee.

William Kirschner & Associates, Fargo, for defendant and appellant; argued by William Kirschner, Fargo.

LEVINE, Justice.

Alvin E. Hersch appeals from a district court judgment entered upon a jury verdict finding him guilty of nine counts of theft of property. We affirm two counts, reverse seven counts, and remand for further proceedings consistent with this opinion.

The impetus for Hersch's convictions was his sale of coin-operated machines to investors and his subsequent failure to deliver or locate the machines for the investors and to return the purchase price. From April 1984 until June 1984 Hersch sold the Med Pulse 2000, a coin-operated blood pressure measuring machine, for Gary Tharaldson, who had "exclusive" territorial rights for that machine in thirty-eight states, including North Dakota. In May 1984 Hersch formed his own corporation, Tri–State Medical Vending, Inc., to buy the blood pressure machines from Tharaldson and sell them to investors. According to the State, Hersch's sales pitch to the investors included promises that each blood pressure machine would earn more than five dollars per day for the investors; that a management company would locate each machine in a high traffic area to assure a large profit; and that the management company would collect income from each machine and forward a percentage to the investors. Although Hersch bought only ninety blood pressure machines from Tharaldson, he sold more than 120 machines to investors for approximately $200,000.

When the blood pressure machines were not located and the complaining investors did not receive their expected profits, Hersch persuaded some of them to trade their blood pressure machines for pay telephones. Hersch also sold pay telephones to other investors through another corporation, Tri–State Empire Communications, Inc. According to the State, Hersch assured those investors that the pay telephones would generate a profit for the investors; that a professional locator would locate the telephones; and that the income from the telephones would be collected and distributed to the investors. Hersch sold fifty-two pay telephones to investors for about $70,000. None of the complaining investors received the pay telephones or any profits. In March 1985, Tri–State Medical Vending and Tri–State Empire Communications ceased doing business.

On June 9, 1987 and June 12, 1987, the State filed criminal complaints against Hersch in the counties where the transactions involving the blood pressure machines

and pay telephones occurred, charging him with nine counts [1] of theft by deception in violation of Section 12.1–23–02(2), N.D.C.C., a class C felony. The cases were consolidated and three criminal informations charging Hersch with a total of nine counts of theft by deception were filed in district court on December 21, 1987. Hersch was convicted by a jury on all nine counts and was sentenced separately on each count.

Hersch first argues that two of the informations, each of which alleged four counts of theft of property, failed to charge him with a crime because their prefatory language was not incorporated into each separate count. Although Hersch did not raise this issue below, defects based on the failure of an information to charge an offense may be raised at any time during the pendency of the proceeding. Rule 12(b)(2), N.D.R.Crim.P.

▮ Each four-count information contained introductory language that alleged that "on or after" the date of sale, Hersch committed "theft of property in violation of N.D.C.C. § 12.1–23–02(2), in that [he] did knowingly obtain property of another by deception with intent to deprive the owner thereof, or did intentionally deprive another of his property by deception." A colon followed the prefatory language. Each information then stated four separate counts, which alleged that Hersch promised to provide the complainants with blood pressure machines or pay telephones and failed to provide the machines and refused to return the purchase money. We believe the colon at the end of the prefatory language of the four-count informations incorporated that language into each count. We conclude that the four-count informations contained

a plain, concise, and definite written statement of the essential elements required to allege a violation of Section 12.1–23–02(2), N.D.C.C., and were factually sufficient to fairly inform Hersch of the charge so that he could prepare his defense.[2] Rule 7(c), N.D.R.Crim.P.; *see State v. Skjonsby,* 319 N.W.2d 764 (N.D.1982); *State v. Jelliff,* 251 N.W.2d 1 (N.D.1977).

Hersch next argues the three-year statute of limitations barred his prosecution. Hersch concedes that this issue was not raised below, but contends that the statute of limitations is jurisdictional and may be noticed for the first time on appeal.

▮ While some jurisdictions hold that a statute of limitations in a criminal action is an affirmative defense and may be waived [*United States v. Wild,* 551 F.2d 418 (D.C.Cir.1977), *cert. denied,* 431 U.S. 916, 97 S.Ct. 2178, 53 L.Ed.2d 226 (1977); *People v. Williams,* 79 Ill.App.3d 806, 35 Ill.Dec. 63, 398 N.E.2d 1013 (App.Ct.1979); *Padie v. State,* 594 P.2d 50 (Alaska 1979) ], in *State v. Tennyson,* 73 N.D. 259, 14 N.W.2d 171 (1944), this court said that the statute of limitations in a criminal case is a jurisdictional fact which creates a bar to prosecution. *See State v. Thomas,* 72 N.D. 537, 9 N.W.2d 442 (1943). Our decisions thus follow the rule that an information that shows on its face that the prosecution is barred by the statute of limitations fails to state a public offense and is noticeable for the first time on appeal. *E.g., Waters v. United States,* 328 F.2d 739 (10th Cir. 1964); *Benes v. United States,* 276 F.2d 99 (6th Cir.1960); *People v. Zamora,* 18 Cal.3d 538, 134 Cal.Rptr. 784, 557 P.2d 75 (1976); *State v. Civella,* 364 S.W.2d 624 (Mo.Ct.

---

**1.** The nine counts against Hersch involved the following transactions: [count 1] July 3, 1984 sale of 10 blood pressure machines to Olaf and Gladys Hegseth for $18,163.60; [count 2] October 1, 1984 sale of 4 pay telephones to the Hegseths for $7,280.00; [count 3] November 14, 1984 sale of 5 pay telephones to the Hegseths for $10,374.00; [count 4] December 28, 1984 sale of 5 pay telephones to the Hegseths for $9,100.00; [count 5] August 14, 1984 sale of 8 blood pressure machines to El Dee and Blanche Cummings for $12,000.00; [count 6] August 17, 1984 sale of 10 blood pressure machines to Ed and Edith Jordheim for $14,505.00 and a trade of the blood pressure machines for 10 pay telephones on January 1, 1985; [count 7] July 15, 1984 sale of 5 blood pressure machines to Curtis and Ruth Eberhardt for $7,254.00; [count 8] October 9, 1984 sale of 5 pay telephones to Ed and Edith Jordheim for $9,100.00; and [count 9] July 17, 1984 sale of 4 blood pressure machines to Robert Jordheim for $5,803.00 and a trade of the blood pressure machines for 3 pay telephones on October 23, 1984.

**2.** We note that Hersch did not request a bill of particulars.

App.1963); *State v. Stillwell*, 175 N.J.Super. 244, 418 A.2d 267 (1980); *City of Cleveland v. Hirsch*, 26 Ohio App.2d 6, 268 N.E.2d 600 (1971). We conclude that Hersch did not waive the statute of limitations by failing to raise it below.

Hersch contends that the three-year statute of limitations barred his conviction on seven of the nine counts alleged in the information. He argues that the prosecutions for those seven counts were barred by Sections 29–04–02, and 29–04–05, N.D.C.C., because the transactions involved in those counts were alleged to have occurred more than three years before the informations were filed on December 21, 1987.[3] *[See fn. 1]*. Relying on an amendment to Section 29–04–02, N.D.C.C., effective July 8, 1987,[4] the State responds that the prosecutions for those seven counts were commenced by the filing .of the criminal complaints in June 1987 and were therefore within the three-year statute of limitations.

■ Our initial inquiry concerns whether the 1987 amendment to Section 29–04–02, N.D.C.C., is applicable to this case. In *Reiling v. Bhattacharyya*, 276 N.W.2d 237, 240–241 (N.D.1979), this court held that Section 1–02–10, N.D.C.C.,[5] applies to all statutes enacted by the Legislature regardless of whether they are substantive or procedural and that "[a]ll statutes enacted by the legislature are to be applied prospectively, *i.e.*, they are to be applied only to causes of action that arise after the effective date of the statute, unless the legislature clearly expresses that they are to be applied retroactively." The conduct in this case occurred before the 1987 amendment to Section 29–04–02, N.D.C.C., and the Legislature did not clearly express retroactive application of that amendment. We are therefore guided by the pre–1987 statute of limitations.[6]

Before its amendment in 1987, Section 29–04–02, N.D.C.C., provided:

"*Prosecution for felony other than murder within three years.*—An information for any felony other than murder must be filed, or an indictment must be found, within three years after its commission. Nothing in this section contained shall be construed to bar or prevent a person prosecuted for murder from being found guilty of manslaughter and punished accordingly."

Section 29–04–05, N.D.C.C., provides:

"*When action is commenced.*—An information is filed or an indictment found within the meaning of this chapter when it is presented, if an information, by the state's attorney or person appointed to prosecute, or, if an indictment, by the grand jury, in open court, and there received and filed, or if a complaint, when filed by a magistrate having jurisdiction to hear, try, and determine the action."

■ Statutory language must be construed as a whole to determine the legislative intent. *E.g., County of Stutsman v. State Historical Society of North Dakota*, 371 N.W.2d 321 (N.D.1985). In ascertaining the legislative intent, we first look to the statutory language. *Id.* Statutory language must be given its plain, ordinary, and commonly understood meaning. *Id.*

---

3. Hersch does not argue that the prosecutions for counts four and six were barred by the statute of limitations. The transactions involved in those counts were alleged to have occurred on December 28, 1984, and January 1, 1985, respectively and were within three years of the filing of the informations on December 21, 1987.

4. As amended in 1987, Section 29–04–02, N.D.C.C., provides:

"*Prosecution for felony other than murder within three years.* Except as otherwise provided by law, a prosecution for any felony other than murder must be commenced within three years after its commission. Nothing in this section prevents a person prosecuted for murder from being found guilty of any included offense and punished accordingly."

5. Section 1–02–10, N.D.C.C., provides:

"*Code not retroactive unless so declared.* No part of this code is retroactive unless it is expressly declared to be so."

6. The State's reliance on *State v. Pleason*, 56 N.D. 499, 218 N.W. 154 (1928) is misplaced. In *Pleason*, this court held that the application of a 1925 amendment of the statute of limitations to a crime committed in 1924 was not an ex post facto law. *Pleason* is not controlling because it involved only the issue of an ex post facto law and not our recent decisions construing Section 1–02–10, N.D.C.C.

We are also guided by the principle that statutes of limitation are to be construed liberally in favor of the accused and against the prosecution. *E.g., Toussie v. United States*, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970).

■ Section 29–01–01, N.D.C.C., and Rule 7(a), N.D.R.Crim.P., require that all prosecutions in district court be by information or indictment. The plain language of Section 29–04–02, N.D.C.C., requires that "[a]n information for any felony other than murder ... be filed ... within three years after its commission." Section 29–04–05, N.D.C.C., plainly states that "[a]n information is filed ... when it is presented ... by the state's attorney or person appointed to prosecute ... in open court, and there received and filed, or if a complaint, when filed by a magistrate having jurisdiction to hear, try, and determine the action." Section 29–01–15, N.D.C.C., authorizes a county judge to act as a committing magistrate[7] and to hear, try, and determine misdemeanors. Section 27–07.1–17(2), N.D.C.C., also gives the county court jurisdiction to hear misdemeanors.

Although criminal complaints charging Hersch with nine class C felonies were filed in county court in June 1987, those complaints were not filed by a magistrate having jurisdiction to "hear, try, and determine the action" as required by the plain language of Section 29–04–05, N.D.C.C. Construing Sections 29–04–02 and 29–04–05, N.D.C.C., otherwise would ignore their plain language and the jurisdiction of county courts as well as the requirement that statute of limitations be liberally construed in favor of the accused.

We conclude that the prosecutions against Hersch were commenced by the filing of the informations in district court on December 21, 1987.[8] In order to be within the statute of limitations, the commission of the offenses must have been no more than three years before that date. We thus address the issue of when the offenses alleged in the information were committed.

■ A crime is committed when all of its essential elements are present and complete. *Pendergast v. United States*, 317 U.S. 412, 63 S.Ct. 268, 87 L.Ed. 368 (1943); *Griffin v. State*, 352 So.2d 847 (Ala.1977). Both a culpable *mens rea* and a criminal *actus reus* are generally required for an offense to occur. *State v. Kraft*, 413 N.W.2d 303 (N.D.1987); *United States v. Apfelbaum*, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980). The statute of limitations begins to run when all the elements of the crime coalesce. *Griffin v. State, supra*.

In this case, Hersch was charged with theft of property under Section 12.1–23–02(2), N.D.C.C.:

"A person is guilty of theft if he:

\* \* \* \* \* \*

"2. Knowingly obtains the property of another by deception or by threat with intent to deprive the owner thereof, or intentionally deprives another of his property by deception or by threat...."

Section 12.1–23–10, N.D.C.C., defines "obtain" and "deprive":

"3. 'Deprive' means:

"a. To withhold property or to cause it to be withheld either permanently or

---

**7.** Section 29–01–14(3), N.D.C.C., defines a "magistrate" as a "county judge." In *State v. Sadowski*, 331 N.W.2d 274, 276 (N.D.1983), we said that a " 'committing magistrate' is a limiting term and generally refers to a judicial officer who is empowered to preside over preliminary hearings in which the accused can either be discharged or bound over for trial and to accept bail and release the accused upon such acceptance."

**8.** *State v. Buehler*, 125 N.W.2d 155 (N.D.1963), provides no help for Hersch. That case involved the North Dakota Constitution's require-

ment that every criminal prosecution for a misdemeanor be by indictment or information, and we said:

"This statute, [Section 29–01–01(3), N.D. C.C.] which, by inference, permits the prosecution of a person for the commission of a misdemeanor in county court with increased jurisdiction by criminal complaint, is constitutional, as a criminal complaint authorized for use in said court under present law is the equivalent of an 'information' as contemplated by our state constitution." *State v. Buehler, supra*, 125 N.W.2d at 158.

under such circumstances that a major portion of its economic value, or its use and benefit, has, in fact, been appropriated; or

\* \* \* \* \* \*

"c. To dispose of property or use it or transfer any interest in it under circumstances that make its restoration, in fact, unlikely.

\* \* \* \* \* \*

"6. 'Obtain' means:

"a. In relation to property, to bring about a transfer or purported transfer of an interest in the property, whether to the actor or another."

Sections 12.1–23–02 and 12.1–23–10, N.D. C.C., are virtually identical to Sections 1732 and 1741 of the Final Report of the National Commission on Reform of Federal Criminal Laws. Because those provisions were derived from the proposed federal criminal code, we may look to the official commentaries of the proposed code for guidance in the meaning and application of those provisions. *State v. Bastien*, 436 N.W.2d 229 (N.D.1989).

The official commentaries explain the terms "knowingly obtain" and "intentionally deprives" as used in Section 12.1–23–02(2), N.D.C.C.:

"As can readily be seen, the combination of 'obtain' and 'deprive' amounts essentially to the same coverage as 'takes or exercises control.' 'Obtains' corresponds to 'takes control' in that it is the initial acquisition of property that is meant to be covered. 'Deprives' corresponds to 'exercises control' in that both concepts relate to the actor's conduct after he has initially acquired the property in a lawful manner. Between the two terms—'obtain' and 'deprive'—the entire range of conduct between an initial acquisition and a withholding after a proper initial acquisition is included.

"Moreover, these terms build into this type of theft the same degree of perma-

nent deprivation as is envisaged by subsection (a). 'Obtain' means a transfer or purposed transfer of an interest, and the term transfer carries the implication of a permanent disposition. One who obtains a transfer of property to himself, in other words, obtains all the transferor has to give in that property. 'Deprives' means, on the other hand, a withholding of property either permanently or in such a manner as to amount to the same thing." Comment of Theft Offenses: §§ 1731–1741, Working Papers of the National Commission on Reform of Federal Criminal Laws, Volume 2, pp. 922–923 (1970).

Under our prior law, obtaining property by false pretenses was defined only as obtaining property and this court held that that crime was complete when the defendant obtained property from another with an intent to defraud, *i.e.*, when the defrauded person parted with property. *State v. Persons*, 201 N.W.2d 895 (N.D.1972); *State v. Merry*, 20 N.D. 337, 127 N.W. 83 (1910). The official commentaries and the definition of "obtain" indicate that the import of those decisions has not changed under our current law. However, the current theft of property law includes not only obtaining property but also intentionally depriving another of property. *See State v. Bastien, supra* [theft by deception broadly defined to include a wide variety of different forms in which one can attempt to bilk another of his property]. Section 12.1–23–02(2), N.D. C.C., therefore criminalizes both obtaining property by deception and intentionally depriving another of property by deception, both of which were charged in this case.

▮▮▮▮ The elements of the crime of intentionally depriving another of property by deception are (1) a *mens rea* of intentional, and (2) an *actus reus* of depriving another of property by deception. The conduct specified in the definitions of "deprive" and "deception" [9] requires the actor

---

9. Section 12.1–23–10(2) provides:

"2. 'Deception' means:

"a. Creating or reinforcing a false impression, including false impressions as to fact, law, status, value, intention, or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not substantially perform the promise unless it is part of a continuing scheme to defraud; or

to withhold another's property by reinforcing a false impression, failing to correct an impression which has become false, or using any other scheme to defraud. When that conduct and the *mens rea* of intentionally coalesce, the crime is complete for purposes of the statute of limitations.[10]

\* \* \* \* \* \*

"d. Failing to correct an impression which the actor previously created or reinforced and which the actor knows to have become false due to subsequent events; or

\* \* \* \* \* \*

"g. Any other scheme to defraud. The term 'deception' does not, however, include falsifications as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed. 'Puffing' means an exaggerated commendation of wares in communications addressed to the public or to a class or group."

10. We reject the notion that the crime is a continuing offense for which the statute of limitations does not begin to run until completion of the last act which, viewed by itself, is a crime. *John v. State,* 96 Wis.2d 183, 291 N.W.2d 502 (1980); *Duncan v. State,* 282 Md. 385, 384 A.2d 456 (1978). The continuing offense doctrine is applied sparingly because " '[t]he tension between the purpose of a statute of limitations [to limit exposure to criminal prosecutions to a certain fixed period of time] and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term.' " *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156, 161 (1970). An offense is not continuous unless the explicit language of the substantive criminal statute compels that determination, or the nature of the crime involved is such that the Legislature must have intended that result. *Toussie v. United States, supra.* Whether or not a particular crime is a continuing offense is therefore a question of statutory interpretation. *Id.*

In *Toussie, supra,* the Court held that failing to register for the draft was not a continuing offense because there was no language in the statute which contemplated a continuous course of conduct, nor was there anything inherent in the act of registration which made failure to register a continuing crime. The Court recognized the logic of the argument for implying a continuing offense, but concluded:

" 'when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication.' *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221–222, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952)." *Toussie v.*

Under those definitions, the State argues that, for counts 1, 2, 3, 5, 7, 8, and 9, there was evidence from which the jury could have found that the elements of intentionally depriving another of property by deception coalesced after December 21, 1984,

*United States, supra,* 397 U.S. at 122, 90 S.Ct. at 864, 25 L.Ed.2d at 165.

In this case, the only language even suggesting the idea of a continuous offense is the "continuing scheme to defraud" language in the definition of deception [Section 12.1–23–10(2), N.D. C.C.]. The official commentary states that, because the crime of theft of property was not intended as a substitute for a breach of contract suit, that language provides an evidentiary limitation so that a false promise may not be inferred merely from nonperformance of a promise. Comment on Theft of Property Offenses: §§ 1731–1741, Working Papers of the National Commission on Reform of Federal Criminal Laws, Volume 2, pp. 925 (1970). The official commentary provides no indication that the "continuing scheme to defraud" language was intended to make theft of property a continuing offense.

Moreover, the nature of the crime of withholding or retaining money or property does not evidence an intent to make that crime a continuing offense. *United States v. Irvine,* 98 U.S. 450, 25 L.Ed. 193 (1879) [withholding money is not a continuing offense]; *United States v. Mendoza,* 122 F.Supp. 367 (N.D.Cal.1954) [retaining property known to be stolen not a continuing offense]; *Duncan v. State, supra* [retaining possession of goods with knowledge that they had been unlawfully obtained not a continuing offense]; *State v. Webb,* 311 So.2d 190 (Fla.App.1975) [retaining property known to be stolen not a continuing offense]; *State v. Ladely,* 82 Wash.2d 172, 509 P.2d 658 (1973) [receiving, concealing or withholding stolen property not a continuing offense]. For purposes of the statute of limitations, the crime of withholding or retaining property is complete from the time a defendant first withholds or retains property with the requisite intent. *Irvine, supra; Mendoza, supra; Duncan, supra; Webb, supra; Ladely, supra.*

The rationale of these cases is consistent with the principles of *Toussie, supra,* that the continuing offense doctrine should be applied in limited circumstances and a choice between two interpretations of a statute should not be resolved in favor of deriving "criminal outlawry" from some ambiguous implication. Applying the *Toussie* principles to this case, the crime of intentionally withholding another's property by deception is not a continuing offense for purposes of the statute of limitations. Rather, that crime is complete, for purposes of the statute of limitations, when a defendant first intentionally withholds another's property by deception.

the date the three year statute of limitations commenced, and therefore the prosecutions for those seven counts were not barred by the statute of limitations. However, the State's argument ignores that the jury was not properly instructed on that issue.

In *State v. Hatch,* 346 N.W.2d 268 (N.D.1984), we said that when the exact time of the commission of the offense of theft of property under Section 12.1–23–02(2), N.D.C.C., was not a substantive element of proof, the State need not prove that the crime was committed on the precise date or time alleged in the complaint or information, but that the State must prove that the crime charged was committed within the time fixed by the applicable statute of limitations. When there are issues of fact concerning whether the applicable statute of limitations has run, it is appropriate for the trial court to instruct the jury on the matter. *State v. Ford,* 377 N.W.2d 125 (N.D.1985). The State must prove compliance with the statute of limitations by a preponderance of evidence. *State v. Tibor,* 373 N.W.2d 877 (N.D.1985).

In this case, the only instructions given to the jury about the time of the offense and the statute of limitations were as follows:

> "[T]hat the offense charged by that count being considered was committed, if such should be the fact, on or after the date alleged;
>
>     *     *     *     *     *     *
>
> "The exact time of the commission of an offense of Theft of Property is not a substantive element of proof. Therefore, the State is not required to prove that the crime of Theft of Property was committed on the precise date or time alleged in the Informations."

The jury was not instructed that the State must prove by a preponderance of evidence that the theft by deception occurred within the applicable statute of limitations as required by *Hatch, supra,* and *Tibor, supra.*

Although trial counsel neither requested that instruction nor objected to its absence, we believe that the failure to give that instruction in this case was obvious error under Rule 52(b), N.D.R.Crim.P. Generally, an issue such as the failure to give a jury instruction or the absence of a request for such an instruction will not be noticed for the first time on appeal unless it is obvious error which infringes upon substantial rights of the defendant. *State v. Kraft,* 413 N.W.2d 303 (N.D.1987). Our power to notice obvious error is exercised cautiously and only in exceptional circumstances where a serious injustice has been suffered by the defendant. *E.g., State v. Haverluk,* 432 N.W.2d 871 (N.D.1988). In assessing the possibility of error affecting substantial rights under Rule 52(b), N.D.R. Crim.P., we must examine the entire record and the probable effect of the actions alleged to be error in light of all the evidence. *Id.*

Although the statute of limitations is not an affirmative defense, we believe that cases applying obvious error to affirmative defenses are a helpful analogy to our analysis. We have held that the failure to instruct the jury on an applicable defense where there was evidence to support that defense was obvious error entitling the defendant to a new trial. *State v. Kraft, supra; see United States v. Borelli,* 336 F.2d 376 (2d Cir.1964), *cert. denied,* 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965) [failure to instruct jury that it must find that defendant committed crime within the statute of limitations was plain error]. In assessing whether a defendant is entitled to jury instructions on a defense, we view the evidence in the light most favorable to the defendant. *State v. Kraft, supra; State v. Thiel,* 411 N.W.2d 66 (N.D. 1987).

Similarly, in this case, the evidence, viewed in the light most favorable to Hersch, is that he both knowingly obtained and intentionally deprived others of property by deception before December 21, 1984, and therefore outside the statute of limitations for counts 1, 2, 3, 5, 7, 8, and 9. Hersch was entitled to have the jury decide whether the prosecutions for those counts were barred by the statute of limitations. We conclude that the failure to instruct the

jury on that issue was obvious error. We therefore believe that Hersch is entitled to a new trial with appropriate instructions that the State must prove by a preponderance of evidence that the theft by deception occurred within the three-year statute of limitations for those seven counts. However, Hersch is not entitled to a new trial on counts four and six because the transactions involved in those two counts occurred on December 28, 1984, and January 1, 1985, respectively and were undisputably within three years of the filing of the informations on December 21, 1987.

We disagree with Hersch's argument that his conduct relating to counts four and six was only a breach of contract and not a crime. Hersch overlooks the "continuing scheme" statutory language on which the jury was instructed in language tracking Section 12.1-23-10(2), N.D. C.C. [See fn. 9]. While theft by deception is limited so that a fraudulent intent not to perform a promise cannot be inferred from the nonperformance of a contract, if the nonperformance is part of a continuing scheme to defraud, deceptive intent may be inferred. See Comment on Theft Offenses: §§ 1731–1741, Working Papers of the National Commission on Reform of Federal Criminal Laws, Volume 2, p. 925 (1970).

Hersch also argues that the trial court erred in admitting certain testimony at trial and failing to give proper jury instructions. Hersch concedes that those issues were not raised below but asks us to review them under Rule 52(b), N.D.R. Crim.P., as error affecting his substantial rights. We have reviewed these alleged errors as they pertain to the convictions on counts four and six, and we conclude that they do not rise to the level of obvious error.

Hersch also argues that he received ineffective assistance of counsel because of the failure of trial counsel[11] to raise certain issues during trial.

In *State v. Ricehill,* 415 N.W.2d 481 (N.D.1987), we outlined the standards for establishing ineffective assistance of counsel, noting that generally such claims are most effectively presented before the trial court in post-conviction relief proceedings. *See State v. Frey,* 441 N.W.2d 668 (N.D. 1989); *State v. Brown,* 420 N.W.2d 5 (N.D. 1988); *State v. Denney,* 417 N.W.2d 181 (N.D.1987).

We do not review ineffective assistance of counsel claims on direct appeal unless we can readily determine from the record that assistance of trial counsel was plainly defective and there are no other grounds for reversal. *Frey, supra; Ricehill, supra.* If that determination cannot be made from the record, the defendant can pursue his claim at a post-conviction proceeding where an adequate record can be developed. *Id.*

In this case, as in *Ricehill* and *Frey,* we are unable to conclude from the record that Hersch's counsel was constitutionally ineffective as to the two counts which occurred within the statute of limitations. Hersch may raise that issue at an appropriate proceeding for post-conviction relief. *See State v. Brown, supra; State v. Denney, supra.*

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

---

11. Hersch's attorney on this appeal did not represent Hersch at trial.