**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Maurice THILL, Defendant and Appellee.**

**Crim. No. 900318.**

Supreme Court of North Dakota.

April 18, 1991.

---

Patricia L. Burke (argued), States Atty., Bismarck, for plaintiff and appellant.

Rolf P. Sletten (argued), Bismarck, for defendant and appellee.

MESCHKE, Justice.

The State appealed from an order dismissing a criminal charge of child sexual abuse against Maurice Thill as barred by the statute of limitations. We conclude that the trial court misapplied the statutes of limitation. We reverse and remand for trial.

In September 1989, Maurice Thill was arrested for violating NDCC 12.1–20–03 (1977),[1] a class A felony, by sexual acts with a seven-year-old child. After a series of delays, a preliminary hearing in county court on January 31, 1990, resulted in Thill being bound over to the district court for trial. The information, dated October 13, 1989, was finally filed in district court on February 1, 1990.

At the jury trial, the State's evidence established that the sexual acts could not have continued after December 1986 when the victim moved out of town. Thill sought acquittal on grounds that the three-year statute of limitations for non-murder felonies, NDCC 29–04–02 (1973),[2] barred prosecution since the information was filed more than three years after any possible criminal act. The State resisted Thill's motion on grounds that several 1985 and 1987 enactments had extended the limitation period for prosecution of sexual abuse of a child beyond three years. The trial court concluded that the 1985 and 1987 extensions were inapplicable and that NDCC 29–04–02 (1973) barred this prosecution. The trial

---

**1.** Before amendment by 1987 N.D.S.L. ch. 168, § 1, the relevant parts of NDCC 12.1–20–03 (1977) said:

1. A person who engages in a sexual act with another, or who causes another to engage in a sexual act, is guilty of an offense if:

\* \* \* \* \* \*

d. The victim is less than fifteen years old;

\* \* \* \* \* \*

3. An offense under this section is a class A felony if in the course of the offense the actor inflicts serious bodily injury upon the victim,

or if his conduct violates subdivision d of subsection 1, or if the victim is not a voluntary companion of the actor and has not previously permitted him sexual liberties. Otherwise the offense is a class B felony.

**2.** The relevant part of NDCC 29–04–02 (1973) says:

An information for any felony other than murder must be filed, or an indictment must be found, within three years after its commission. . . .

court did not submit the case to the jury and ordered the criminal charge dismissed.

The State appealed, arguing that the trial court misinterpreted and failed to apply the 1985 or the 1987 enactments extending the time to prosecute charges of sexual abuse of a child. We agree that the 1985 extension applies.

The State contends that it can appeal from this dismissal. Although Thill does not contest the State's right to do so, we address the contention because it affects our jurisdiction.

■■■■ The State may appeal from "[a]n order quashing an information or indictment or any count thereof." NDCC 29–28–07(1) (1985). This includes the right to appeal from a dismissal, regardless of its label, that has the same effect as an order quashing an information. *State v. Hogie*, 424 N.W.2d 630, 631 (N.D.1988). A majority of this court has ruled that a dismissal based upon legal conclusions, rather than resolution of any factual element of the offense, is equivalent to an order quashing an information and is appealable by the State. *State v. Bettenhausen*, 460 N.W.2d 394 (N.D.1990). By his motion, Thill successfully avoided submission of his factual guilt or innocence to the jury. *See Hogie*. Accordingly, we have jurisdiction of this appeal.

■■ Expiration of the limitation period bars prosecution of a criminal charge. *State v. Hersch*, 445 N.W.2d 626 (N.D. 1989). Prior to 1985, the limitation for any non-murder felony was three years. NDCC 29–04–02 (1973). This criminal information, although signed in October 1989, was not filed in the district court until February 1, 1990, more than three years after the charged crime. *See Hersch*, 445 N.W.2d at 631. Therefore, this prosecution of Thill is barred unless one of the 1985 or 1987 extensions applies.

■■ The 1985 enactment created a specific, separate time limit for prosecuting a charge of sexual abuse of a child. This new section, NDCC 29–04–03.1 (1985), said:

*Prosecution for child sexual abuse within seven years.* An information, in-

dictment, or complaint for violation of sections 12.1–20–03 through 12.1–20–08, and 12.1–20–11, *where the victim and the actor were in a familial relationship* at the time the offense was committed, shall be found, made, or filed in the proper court within seven years after the commission of the offense.

"Familial relationship", for purposes of this section, means a situation in which the actor is any of the following:

1. The complainant's parent, stepparent, or guardian.
2. Nearer of kin to the complainant than first cousin, computed by rules of the civil law, whether of the half or the whole blood.
3. The brother, sister, stepbrother, stepsister, first cousin, aunt, uncle, nephew, niece, grandparent, great grandparent, great uncle, or great aunt of the complainant, by marriage or adoption.
4. An adult who jointly resides intermittently or regularly in the same dwelling as the *complainant* and who is not the complainant's spouse. (Emphasis added).

Since Thill was not a relative by blood or marriage, subsection 4 defines the only possible "familial relationship" that could exist between Thill and the victim.

The trial court interpreted the word "complainant" in subsection 4 to mean the person who signed the criminal complaint. Since that person was the investigating police officer who obviously did not have a "familial relationship" with the child, the trial court concluded that this extended time limit for prosecution of child sexual abuse could not apply.

On appeal, the State argues that the trial court's interpretation is "in direct conflict with the contextual definition of the word complainant. The language in the entire section indicates that the complainant is the child victim." We agree.

A term in the Criminal Code similar to "complainant" is "complaining witness," which means "the alleged victim of the offense charged" for other evidentiary pur-

poses.[3] NDCC 12.1–20–14(4) (1975). This definition is found in the same chapter with the section that Thill is accused of violating. Words and phrases are to be construed according to their context. NDCC 1–02–03. The State argues that, in this context, "victim," "complainant," and "complaining witness" have the same meaning. We agree.

Thill argues that uses of the term "complainant" in NDRCrimP 3(a),[4] the Explanatory Note to NDRCrimP 3,[5] and NDCC 29–05–05[6] support the trial court's interpretation. However, NDRCrimP 3(a) and its Explanatory Note are unsuitable references to ascertain legislative intent because they have been adopted by the Court, not the legislature. Only the headnote of NDCC 29–05–05 uses the term "complainant," so that reference is not useful to determine legislative intent.[7] Still, Thill argues that "[t]he legislature could easily have used another term if they had intended a different meaning." We are not persuaded.

The usual rules for interpreting criminal statutes are summarized:

Statutory language must be construed as a whole to determine the legislative intent.... In ascertaining the legislative intent, we first look to the statutory language.... Statutory language must be given its plain, ordinary, and commonly understood meaning.... We are also guided by the principle that statutes of limitation are to be construed liberally in favor of the accused and against the prosecution.

*State v. Hersch*, 445 N.W.2d at 630–31 (citations omitted). Also, it is presumed that "a just and reasonable result" is intended. NDCC 1–02–38(3). If the language is of doubtful meaning, a statute may be construed to avoid an absurd or ludicrous result. *County of Stutsman v. State Historical Society of North Dakota*, 371 N.W.2d 321, 325 (N.D.1985). The legislative history of NDCC 29–04–03.1 (1985) makes it clear that the legislature's intention was to extend the time for prosecutions of sexual abuse of children. Where we can discern the legislative intent through "the ordinary sense of the statutory words, the context in which they are

**3.** "When words or phrases are defined by statute, that definition may be relied upon in construing the meaning of those words or phrases in a *similar statute*. NDCC §§ 1–02–02 and 1–02–03; *State v. Johnson*, 417 N.W.2d 365 (1987)." *Larson v. Baer*, 418 N.W.2d 282, 289 n. 7 (N.D.1988) (emphasis added). The term "complainant" is defined only once in the North Dakota Century Code, in the Administrative Agencies Practice Act:

"Complainant" means any person who files a complaint before an administrative agency pursuant to section 28–32–05; and any administrative agency which, when authorized by law, files such a complaint before such agency or any other agency.

NDCC 28–32–01(2). However, this definition of "complainant" cannot apply because criminal statutes are dissimilar from statutes that govern administrative proceedings.

**4.** NDRCrimP 3(a) says:

The complaint is a written statement of the essential facts constituting the offense charged. It shall be made upon oath before a magistrate of this state who may examine on oath the complainant and other witnesses as well as receive any affidavit filed with the complaint. If the magistrate examines the complainant or other witnesses on oath, he must cause their statements to be reduced to writing and to be subscribed by the persons

making them or to be recorded by a court reporter or recording equipment.

**5.** The Explanatory Note to NDRCrimP 3 says:

Subdivision (a) is more specific than the Federal Rule insofar as it requires the statements of other witnesses to be both sworn to and reduced to writing while reserving in the magistrate the right to question the complainant.

**6.** The term "complainant" is used only in the headnote of NDCC 29–05–05:

*Witnesses other than complainant.*—*E*very person making complaint charging the commission of a crime or public offense must inform the magistrate of all persons whom he believes to have any knowledge of its commission, and the magistrate, at the time of issuing the warrant, may issue subpoenas for such persons, requiring them to attend at a specified time and place as witnesses.

**7.** NDCC 1–02–12 says:

*Headnote, cross-reference note, and source note.* No headnote, source note, or cross-reference note, whether designating an entire title, chapter, section, subsection, or subdivision, constitutes any part of a statute. A headnote may not be used to determine legislative intent or the legislative history for any statute.

used, and the purpose which prompted their enactment," then we effectuate that intent. *County of Stutsman,* 371 N.W.2d at 327. Equating the "complainant" with the investigating officer who signs the complaint, instead of the victim, would subvert the intent of the legislature in this context. Here, the "complainant" means the "victim."

Thill also argues that, even if the "complainant" means the "victim," it is not appropriate to apply the 1985 enactment in this case because Thill did not actually "reside" in the same dwelling as the victim for the requisite "familial relationship." Certainly, the clause, "[a]n adult who jointly resides intermittently or regularly in the same dwelling" as the complainant-victim, does not call for a legal domicile sufficient for voting privileges. Words used in a statute are to be understood in their ordinary sense unless a contrary intention plainly appears. NDCC 1-02-02. Here, "reside" is synonymous with "live, dwell, sojourn, lodge, stay." Webster's Third New International Dictionary 1931 (1971). Even "intermittently" will do, allowing some discontinuity in the living arrangement.

According to testimony, Thill spent "about every day" at the apartment where the victim lived, including many nights and weekends, for a year or so. Whether Thill was intermittently residing in the same dwelling with the victim is for the jury to decide. *Hersch,* 445 N.W.2d at 634. This argument by Thill does not prohibit his prosecution as a matter of law, but only makes the application of the statutory time limit for his prosecution a question of fact.

We conclude that the trial court misconstrued the term "complainant" in the context of this statute and, therefore, misapplied the statutes of limitation.[8] Accordingly, we reverse and remand for trial.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

---

8. In 1987, the legislature amended NDCC 29-04-02 (1973), amended 29-04-03.1 (1985), and enacted 29-04-03.2, each of which would extend the time for prosecuting this charge if applicable. NDCC 1-02-10 instructs that "[n]o part of this code is retroactive unless it is expressly declared to be so." In *Hersch,* 445 N.W.2d at 630, we concluded that the pre-1987 statute of limitations applied when the conduct occurred before the 1987 amendment to NDCC 29-04-02 (1973) and the legislature did not explicitly declare the time of application of its extension. *See also State v. Dimmler,* 456 N.W.2d 297 (N.D. 1990). The charge against Thill arose from conduct that occurred before the 1987 enactments.

California's rule against retroactivity, like North Dakota's, was derived from the Field Code of Civil Procedure. Cal.Civil Code § 3 (West 1982) (originally enacted 1872). California applies any extension of a statute of limitations immediately, rejecting arguments that it is an "ex post facto" law, as well.

> A law which increases a limitations period or provides a new method of tolling it may be applied immediately to all crimes as to which

the period has not yet run under the prior law. . . .

> As Judge Learned Hand so aptly put it "Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it." (*Falter v. United States* (2nd Cir.1928) 23 F.2d 420, 425–426.)

> We conclude the ex post facto clause does not apply because the statute of limitations on defendant's crime had not expired before the action against him was commenced.

*People v. Lewis,* 180 Cal.App.3d 816, 225 Cal. Rptr. 782, 785 (4 Dist.1986) (citations omitted). Similarly, *see Commonwealth v. Bargeron,* 524 N.E.2d 829 (Mass.1988); *People v. Russo,* 185 Mich.App. 422, 463 N.W.2d 138 (1990).